No. 85-626

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

IN RE THE MARRIAGE OF
JEANNIE F. GOODMAN,

        Petitioner/Appellant

    vs.

WILLIAM WOLF GOODMAN, JR.,

        Respondent/Respondent.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Frank I. Haswell, Judge presiding

COUNSEL OF RECORD:

    For Appellant:

        Keller and German; Robert S. Keller, Kalispell, Montana,

    For Respondent:

        Hash, Jellison, O'Brien and Bartlett;
        M. Dean Jellison, Kalispell, Montana.

        Submitted on Briefs: June 6, 1986

        Decided: August 7, 1986

Filed: AUG 7 - 1986

_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from an amended judgment of the Eleventh Judicial District in and for Flathead County Montana, which divided the marital estate, provided for child support, and denied maintenance. We affirm in part and reverse and remand in part.

Jeannie F. Goodman and William Wolf Goodman, Jr., were married in September 1969. The marriage was dissolved in August, 1985. Four children were born to the Goodmans, ages thirteen, eleven, seven and five at the time of this appeal. Both Jeannie and William are healthy people in their late-thirties. Jeannie has not had outside employment during the marriage, and other than doing some weaving which she sells from time to time, has earned no income. She has three and one-half years of college credit toward a degree in English.

William earns $400 a month as a part-time teacher in the Kalispell Montessori School, with the expectation of becoming a full-time teacher earning about $1,000 a month. At the time of the marriage, however, he had inherited assets, including a trust account, valued at just over $700,000.

The couple bought Salmon Prairie Ranch in the Swan Valley shortly after the marriage and lived there until 1979. William engaged in ranching and had a log home construction enterprise. In 1979 the couple bought a home in Kalispell in order that the children could attend better schools. Expensive remodeling of this home was subsequently undertaken. William occupies this home and Jeannie lives in

another home which William paid for and which payment is to be considered part of the property settlement.

At trial William projected his earnings at $30,000 a year. The court found Jeannie presently could earn $6,000 a year without further education. Jeannie testified it was her intention to pursue further education to become a speech pathologist which would produce an income of $12,000 to $16,000 a year rather than moving to a city where a degree in English could be marketed.

The total marital estate was determined to have a net worth of $1,057,640. The court allowed William to retain the value of his at-marriage net worth of $712,128 with an equal division of the remaining $343,862 with Jeannie. Jeannie would receive her share, $171,931, in a combination of property and cash. No maintenance was awarded.

The court found that an alternating, joint custody arrangement is in the best interests of the children. The children are to reside with William during the school year 1985-1986, with Jeannie during the summer months of 1986, with the residency alternating each succeeding year. Applying the Carlson formula, In Re the Marriage of Carlson (Mont. 1984) 693 P.2d 496, 499-500, 41 St.Rep. 2419, 2423, the court ordered that William pay child support of $250 per month per child when the children reside with Jeannie and that Jeannie pay child support of $50 per month per child when the children reside with William.

Jeannie appeals, arguing the court erred in its distribution of the marital estate; in its determination she is capable of earning an annual income of $6,000 without further education, and is not in need of maintenance; and

3

that application of the Carlson formula is error because she has insufficient income to meet her minimal needs.

We will reverse the District Court only if its findings are clearly erroneous, resulting in an abuse of discretion. Rule 52(a), M.R.Civ.P. The test of abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. [Citing cases.] In Re the Marriage of Perry (Mont. 1985), 704 P.2d 41, 43, 42 St.Rep. 1101, 1104.

In apportioning the marital estate, the District Court must follow the requirements of § 40-4-202(1), MCA, and case law. Smith v. Smith (Mont. 1981), 622 P.2d 1022, 1024, 38 St.Rep. 146, 148; Tefft v. Tefft (Mont. 1981), 628 P.2d 1094, 1099, 38 St.Rep. 837, 844; Peterson v. Peterson (1981), 195 Mont. 157, 163, 636 P.2d 821, 824. Section 40-4-202 says in pertinent part:

> (1) In a proceeding for dissolution of a marriage, . . . the court, . . . shall, . . . equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. In making the apportionment the court shall consider the duration of the marriage . . . ; . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution or dissipation of value of the respective estates and the contribution of a spouse as a homemaker or to the family unit. In dividing property acquired prior to the marriage; . . . the court shall consider those contributions of the other spouse

4

> to the marriage, including: (a) the
> nonmonetary contribution of a homemaker
> (b) the extent to which such
> contributions have facilitated the
> maintenance of this property; and (c)
> whether or not the property division
> serves as an alternative to maintenance
> arrangements.

It is agreed William brought more than $700,000 into the marriage. There is substantial credible evidence on the record which reflects Jeannie's nonmonetary contribution to the marriage. Jeannie testified she milked cows, raised and canned vegetables, ground her own flour to make bread, and sewed many of the clothes the family wore. The marital estate was worth $1,057,640 at the time of the dissolution. We have held if the assets have not appreciated during the marriage, their value at its dissolution cannot be a product of contribution from the marital effort. In Re the Marriage of Balsam (1979), 180 Mont. 129, 134, 589 P.2d 652, 654; In Re the Marriage of Herron (1980), 186 Mont. 396, 403, 608 P.2d 97, 101. William's assets have appreciated, indicating contribution.

At trial, it was agreed the assets owned by William at the start of the marriage totaled $712,128. They consisted of the following:

| | |
|---|---|
| Memphis Residence | $17,000 |
| Furniture | 4,500 |
| Art | 14,000 |
| Stereo | 3,000 |
| Trust Funds (stocks) | 648,899 |
| Trust Funds (bonds) | 9,500 |
| Personally Held Securities | 6,229 |
| Cash | 10,000 |
| TOTAL | $712,128 |

"In order to have a proper distribution of the marital property, we have stated the trial court must first determine the net worth of the parties at the time of the divorce

5

[citing cases]." In Re the Marriage of Brown (1978), 179 Mont. 417, 423, 587 P.2d 361, 365.

The District Court determined the net estate at the time of the dissolution included the following:

| | |
|---|---|
| Salmon Prairie Ranch | $458,000.00 |
| House at 738 Second Ave. E. | 215,000.00 |
| Home Furniture (two houses) | 14,500.00 |
| D.A. Davidson account | 178,691.00 |
| Four cars | 16,400.00 |
| Stereo | 2,500.00 |
| Art work | 20,000.00 |
| Two small land tracts | 37,000.00 |
| Accounts receivable | 11,000.00 |
| Log homes (Salmon Prairie) | 16,000.00 |
| Husband's IRA | 2,225.00 |
| Wife's jewelry | 1,000.00 |
| Wife's loom | 400.00 |
| Wife's guitar | 800.00 |
| Wife's sofa | 1,000.00 |
| Wife's knitting machine | 100.00 |
| Sailboat | 3,000.00 |
| House at 835 First Avenue E. (equity) | 30,000.00 |
| Lake cabin (equity) | 50,000.00 |
| TOTAL | $1,057,641.00 |

The District Court found the following constituted an equitable division of the assets of the net estate to arrive at the marital estate:

| | VALUE | WIFE | HUSBAND |
|---|---|---|---|
| Salmon Prairie Ranch | $458,000 | | 458,000 |
| House-738 2nd Ave. E. | 215,000 | | 215,000 |
| Home furnit. (2 houses) | 14,500 | 7,250 | 7,250 |
| D.A. Davidson Account | 178,690 | | 178,690 |
| Four cars | 16,400 | 2,200 | 14,200 |
| Stereo | 2,500 | | 2,500 |
| Art Work | 20,000 | | 20,000 |
| 2 small land tracts | 37,000 | | 37,000 |
| Accounts receivable | 11,000 | | 11,000 |
| Log homes (Salmon Prairie) | 16,000 | | 16,000 |
| Husband's IRA | 2,500 | | 2,500 |
| Wife's jewelry | 1,000 | 1,000 | |
| Wife's loom | 400 | 400 | |
| Wife's guitar | 800 | 800 | |
| Wife's sofa | 1,000 | 1,000 | |
| Wife's knitting machine | 100 | 100 | |
| Sailboat | 3,000 | 3,000 | |
| House-835 1 Ave.E (equity) | 30,000 | 30,000 | |
| Lake cabin (equity) | 50,000 | | 50,000 |
| SUBTOTALS | $1,057,640 | $45,750 | $1,011,890 |

| | | | |
|---|---|---|---|
| Less Husband's Separate Property | (712,128) | | (712,128) |
| Less Wife's Separate Property | (1,650) | (1,650) | |
| TOTALS | $343,862 | $44,100 | $299,762 |
| TO EQUALIZE | 171,931 | 171,931 | 299,762 |
| | | (44,100) | (171,931) |
| | | $127,831 | $127,831 |

The property and assets of the parties are extensive and complex. We will not attempt to review every element of a complex property distribution . . . Our function is to examine whether there is substantial evidence to support the property distribution. In Re the Marriage of Williams (Mont. 1986), 714 P.2d 548, 554, 43 St.Rep. 319, 327. We find there is substantial credible evidence to support the property division.

We conclude, however, there is not substantial credible evidence to support the lack of a maintenance award, or use of the Carlson formula to determine each party's share of child support. The only evidence on the record Jeannie is capable of earning $6,000 per year is testimony by William to that fact. There is no evidence Jeannie has marketable skills to acquire appropriate employment. We have held that "appropriate employment" as used in § 40-4-203(1)(b), MCA, must be determined with relation to the standard of living achieved by the parties during the marriage. In Re the Marriage of Madson (1978), 180 Mont. 220, 590 P.2d 110. There are no findings the court considered appropriate employment possibilities or the standard of living achieved by the parties during the marriage.

Maintenance can be awarded only to parties lacking sufficient property to provide for their needs and are unable to provide for themselves through appropriate employment.

7

Section 40-4-203(1), MCA. In Re the Marriage of Laster (1982), 197 Mont. 470, 477, 643 P.2d 597, 601; see also Herron, supra and In Re the Marriage of Bowman (Mont. 1981), 633 P.2d 1198, 38 St.Rep. 1515. We have determined that the term "sufficient property" as used in § 40-4-203(1)(a), MCA, means income producing property, not income consuming property. Herron, supra, and Bowman, supra. Much of the property awarded to Jeannie is income consuming, and that which is not is insufficient to meet her needs.

The District Court erred in applying the algebraic formula set out in Carlson, supra, to determine the respective contributions of each party to child support, because there is no evidence of Jeannie's actual earning capability. Carlson says the "earning capacity of the parents must realistically reflect what the parents are capable of earning, using their actual earnings as a guideline." 693 P.2d at 500, 41 St.Rep. 2423. Absent evidence of actual earning, the capability formula cannot be applied. This is not to suggest that either party is excused from providing child support consistent with the means to do so.

> Use of the [Carlson] formula rejects romantic notions of women being supported by their ex-husbands, or fathers refusing employment they don't like. Married parents have no such luxury, and it should not be a luxury afforded divorced parents. 693 P.2d at 500, 41 St.Rep. at 2423.

In this case the award of child support payments from William to Jeannie will continue as ordered by the District Court, but payments from Jeannie to William when the children are living with him will commence when she has found

8

employment, at an amount to be determined by the District Court.

We remand this case to the District Court to determine the amount and duration of a maintenance award in accordance with the factors set forth in § 40-4-203, MCA, and an appropriate level of child support to be paid to William by Jeannie when the children are living with him after she has obtained employment. On remand, the District Court, consistent with this opinion, should consider the sufficiency of the property award, the standard of living achieved during the marriage, and Jeannie's appropriate employment possibilities with relation to that standard of living.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

9

Mr. Justice L. C. Gulbrandson, concurring in part and dissenting in part:

I concur with that portion of the majority opinion affirming the property division, but I respectfully dissent to the remand for determination of a maintenance award in accordance with § 40-4-203, MCA, and to that portion of the opinion which modifies the ordered child support payments. I believe that the District Judge has complied with the provisions of § 40-4-203, MCA, and prior decisions of this Court.

The majority opinion contains the statement that there is no evidence of wife's actual earning capability and that, absent such evidence, the Carlson formula should not be applied.

In my view, the statements of the majority ignore the testimony of the wife that she had three and one-half years of college, six months of Montesorri training at London, England, and that she has sold her weavings in the past, and the testimony of the husband that wife is capable of earning at least a minimal wage in the amount of $300 per month. The wife made no effort to refute the testimony of husband that she could earn a minimal wage but testified that she would like to attend the University of Montana for three and one-half additional years before obtaining employment. The majority opinion quote from Carlson regarding "fathers refusing employment they don't like," should perhaps apply equally to mothers.

The District Court's Findings of Fact contain the following:

> 12. The wife testified that she needs maintenance in the amount of $535.00 per month in addition to child support. The Court determines that the wife is not in need of maintenance in addition to the property division hereinafter provided

and, further, that the husband is not capable of paying any maintenance after he meets his own needs and the child support obligation. The wife is a healthy, employable woman in her mid-thirties. The house where she resides has been set aside to her in the division of the marital assets and the parties have represented to the Court that the mortgage due on the home has now been paid. The wife has received sufficient marital assets to assist in her readjustment following this dissolution and through prudent investment a portion of these assets will be income producing.

13. The wife is able to provide for her own needs and will receive an adequate amount from the husband to meet the needs of the children when they reside primarily with her. Three of the four children are school age. The child support the wife receives is adequate to provide day care, babysitting or pre-school, among other things. The wife is capable of working outside the home.

The District Court's Conclusions of Law contain the following:

5. No separate maintenance should be awarded to the wife.

7. That the property division hereinbefore set forth in the Findings of Fact should be made in lieu of maintenance for the wife.

The majority opinion is silent regarding the District Court's specific finding that "the husband is not capable of paying any maintenance after he meets his own needs and the child support obligation." Husband's testimony that, after paying $1000 per month child support and paying for his own needs, he will be unable to make any maintenance payments without drawing against his capital assets clearly supports the Court's finding.

I cannot concur in this Court's remand for a maintenance award which obviously will have the effect of

11

re-determining the property division which has now been approved by the majority and which was clearly awarded in lieu of maintenance.

I would affirm.

_____
Justice