No.  94-237

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE MARRIAGE OF

JENNIFER M. SMITH,

    Petitioner and Respondent,

    and

RICHARD A. SMITH,

        Respondent and Appellant

FILED

MAR 16 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

          Marcelle C. Quist, Carolyn S. Parker, Quist Law
Firm, Bozeman, Montana

       For Respondent:

          Kent M. Kasting, Kommers, Kasting & Roth, Bozeman,
Montana

Submitted on Briefs:  December 22, 1994

Decided: March 16, 1995

Filed:

_____
     /Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Richard Smith (Richard), appeals from the Findings of Fact and Conclusions of Law entered on December 20, 1993, by the Eighteenth Judicial District Court, Gallatin County, apportioning the marital estate. We affirm.

Richard raises ten issues on appeal, however we have consolidated them into four issues and restate them as follows:

1. Was the District Court's distribution of the marital property in this case clearly erroneous?

2. Whether the District Court's failure to award maintenance was clearly erroneous?

3. Whether the District Court failed to apply the law in a gender neutral fashion?

4. Whether the District Court abused its discretion in failing to grant Richard additional time for discovery?

Richard and Jennifer Miller Smith (Jennifer), were married in 1984. Prior to the marriage, Jennifer was the beneficiary of two trusts, the Alma Decker Irrevocable Trust (Alma Decker Trust) and the Jennifer Miller Smith Revocable Trust (Jennifer Smith Trust). The Alma Decker Trust is a trust established by Jennifer's grandmother in the early 1960's. Jennifer is a discretionary beneficiary under the Alma Decker Trust, and since the trust's inception, the trustee has always been an independent, corporate trustee. The trustee has the exclusive power and duty to invest and manage the trust assets, and exclusive discretion to distribute income and corpus under the trust to the trust's beneficiaries. The trustee is paid a fee for its services. Richard was never a

beneficiary under this trust, did not contribute any monies to this trust, nor were any marital monies ever contributed to this trust.

The Jennifer Smith Trust was created when Jennifer was eighteen, to receive the income from the Alma Decker Trust that was distributed to Jennifer. Like the Alma Decker Trust, it was managed by an independent corporate trustee, which managed the trust assets, and was paid a fee for its services. Jennifer is the trustor and beneficiary of this trust. Richard has never been a beneficiary of this trust and did not make any monetary contributions to the trust.

The value of the Alma Decker Trust on September 30, 1993, (approximately one month before trial), was approximately $1,800,000. The value of the Jennifer Miller Trust on this same date was approximately $282,500. While the value of the trusts increased over the course of the eight year marriage, Richard did not demonstrate that his actions in any way maintained or increased the value of the trusts.

Shortly after the parties married, they opened the High County Anglers, a retail fly fishing and guide services business. Jennifer contributed the initial capitalization for the business with money from the Jennifer Smith Trust. The business never generated a profit, and never paid either party a salary, but did pay for the parties' health insurance premiums and Richard's truck payments. The store closed in October 1987, but the corporate account stayed open and the parties deposited their fly fishing guide earnings into the account. In 1992, the funds of the account were distributed equally between the parties. Jennifer has never

3

been reimbursed the capitalization money she contributed to the business.

During the course of the marriage Richard earned $26,227, and Jennifer earned $1,632, from third-party employers. Jennifer contributed over $550,000 to the parties' living expenses with monies from the Jennifer Smith Trust. The parties had three bank accounts: a household account, to pay for daily living expenses; a large expenditure account, for payment of expenses such as taxes, furniture, home improvements, and other larger one time expenses ; and the High Country Anglers' account. With the exception of $2,382.68, which Richard deposited into the household account, all sums deposited into the household account and the large expenditure account came from distributions from the Jennifer Smith Trust.

The parties purchased a residence in Bozeman in November 1986. The purchase price was $99,900, and Jennifer contributed $50,000 in cash from her revocable trust. The balance was paid with a $50,000 loan from the Alma Decker Trust. The monthly loan payments were to be paid equally by Richard and Jennifer. Based upon the original contributions and the parties' agreement, Jennifer received 75% ownership interest, and Richard received 25% ownership interest. Richard never paid his one half of the monthly loan payment. Beginning December 1986, the loan payment has been made by the Jennifer Smith Trust. In addition, Jennifer expended over $65,000 on home improvements, maintenance, and taxes on the home from her revocable trust.

Jennifer filed a petition for dissolution on June 4, 1992, and

4

the parties separated in September 1992. The parties resolved the issues of custody and visitation concerning the child born of the marriage, and an order governing these issues was entered June 2, 1993. This order is not disputed on appeal. The parties disagreed however, over the distribution of the marital estate, and went to trial on this issue on November 18-19, 1993. The District Court issued its Findings of Fact and Conclusions of Law on December 20, 1993, and concluded that Richard was not entitled to any interest in any of Jennifer's pre-marital gifted and inherited property because he failed to demonstrate that he enhanced or increased the value of the property during the marriage. The court awarded each party their own vehicle, their own household furnishings, and personal effects. The court awarded Richard the stock of High County Anglers, and a drift boat and trailer. The court awarded Jennifer the marital residence, and ordered her to pay Richard $10,055 for his 25% equity interest in the home. Richard appeals from this judgment. Additional facts will be added as is necessary for the discussion of the issues.

## DISTRIBUTION OF THE MARITAL ESTATE

The distribution of marital property in a dissolution action is governed by § 40-4-202, MCA. Under this statute, the district court is vested with broad discretion to distribute the marital estate in a manner which is equitable to each party according to the circumstances of the case. In re Marriage of Maedje (1994), 263 Mont. 262, 265, 868 P.2d 580, 582. This Court's standard of review in marital property distribution cases is whether the district court's findings of fact are clearly erroneous. If

5

substantial credible evidence supports the court's findings and judgment, we will not change the trial court's decision unless the court abused its discretion. Maedje, *868* P.2d at 583.

Richard presents several arguments which all essentially contend that the trial court's distribution of the marital estate was clearly erroneous because the court failed to award him any portion of Jennifer's gifted or inherited property, and failed to award him maintenance. However, after considering the record, we do not find that the court abused its discretion.

Section 40-4-202, MCA, provides that in dividing marital property a court may equitably apportion the parties' property and assets "belonging to either or both, however and whenever acquired." In distributing pre-marital property or its increased value, property acquired by gift, or inheritance, the court must consider the contributions of the non-acquiring spouse. The court must consider:

> (a) the nonmonetary contribution of a homemaker;
> (b) the extent to which such contributions have facilitated the maintenance of this property; and
> (c) whether or not the property division serves as an alternative to maintenance arrangements.

Section 40-4-202, MCA.

Because the District Court concluded that Richard was not entitled to any of Jennifer's pre-marital property, it had to find that he "made *no contribution*" to justify the court's distribution as equitable. Marriage of Turner (1983), 206 Mont. 292, 295, 670 P.2d 568, 570. In regards the two trusts, the court found that Richard' had failed to demonstrate that his actions in any way maintained or increased the value of the corpus of the trusts. The

6

court also found that Richard never had any contact with the corporate trustees, regarding any aspect of the trusts, did not contribute anything to the trusts, and no marital monies were ever contributed to the trusts. We conclude that these findings demonstrate that Richard made no contribution to the trusts.

Richard argues that he is entitled to a portion of Jennifer's pre-marital estate as a result of his nonmonetary contributions of emotional support, child care, and homemaking skills. The statute recognizes that the work of a homemaker can be an important contribution because the marital estate may be substantially depleted if those necessary services had to be purchased. However, the homemaking efforts must substantially aid in the accumulation and/or maintenance of the marital estate. Turner, 670 P.2d at 570.

In this case, the record demonstrates that during the marriage, the parties hired child care help, housecleaning help, and lawn maintenance help. While Richard may have provided emotional support to Jennifer, and provided some child care to his son, he failed to demonstrate that these efforts substantially aided in the accumulation or maintenance of Jennifer's pre-marital assets. Upon review of the record, we conclude that substantial credible evidence supports the District Court's findings and accordingly, we hold that the District Court did not abuse its discretion by not awarding Richard any of Jennifer's pre-marital assets.

## MAINTENANCE

We held in In re Marriage of D.F.D. (1993), 261 Mont. 186, 201, 862 P.2d 368, 377, that the standard of review for maintenance

7

awards is whether the district court's findings are clearly erroneous. Citing, In re Marriage of Eschenbacher (1992), 253 Mont. 139, 142, 831 P.2d 1353, 1355.

Richard argues that even though he did not request maintenance, the court is required to consider an award of maintenance pursuant to § 40-4-202(1)(c), MCA. We will not reach the merits of this argument, because the facts of this case demonstrate that Richard is able to support himself through appropriate employment, and is therefore not entitled to an award of maintenance. Section 40-4-203(1)(b), MCA.

According to § 40-4-203(1), MCA, the court may award maintenance if a spouse:

(a) lacks sufficient property to provide for his reasonable needs; and
(b) is unable to support himself through appropriate employment . . . [Emphasis added.]

The trial court found that Richard was 43 years old, in good health, has two college degrees, both obtained before the marriage, had been self-supporting before the marriage, had worked as Regional Vice President for Dan Bailey's, Inc. from 1989-1990, is talented and well respected in the fly fishing industry, and is presently employed as a clerk at Master's Anglers in Livingston earning approximately $18,000 a year. After a review of these findings, we conclude that Richard failed to meet the requirements of the statute because they indicate he is able to support himself through appropriate employment. Accordingly, we conclude that the District Court's findings were not clearly erroneous, and affirm the court's ruling concerning maintenance.

## GENDER BIAS

Richard argues that the court treated Richard differently "by virtue of his gender." He contends that because he was a male engaged in the non-traditional role of homemaker and caretaker, the court failed to give credit to his nonmonetary contributions. We find these allegations insupportable. The record is simply devoid of any evidence that the court treated Richard differently according to his gender.

As stated above, § 40-4-202, MCA, requires the district court to equitably distribute the marital property, and in distributing pre-marital property, inherited property, or property acquired by gift, the court must consider the non-acquiring spouse's nonmonetary contributions. Here, the majority of the assets consisted of Jennifer's trusts, or property acquired with money from the trusts, and there is no evidence that Richard's nonmonetary contributions substantially enhanced or helped to maintain Jennifer's pre-marital assets. Therefore, the court was correct in awarding that property to Jennifer. The court made its property distribution award based upon the mandates of § 40-4-202, MCA, and not upon gender stereotyping as Richard contends. Had gender been reversed in this case, the result would have been the same. Accordingly, we conclude that this argument is without merit.

## DISCOVERY

Jennifer filed the Petition for Dissolution on June 4, 1992. On August 20, 1992, the District Court issued a discovery order, directing the parties to complete all discovery by December 19, 1992, and set a pretrial conference for January 25, 1993. On

9

January 25, 1993, Richard requested that, the pretrial conference be continued. In the order extending the date of the pretrial conference, the court noted that "the motion is silent on whether discovery is complete . . . or whether this request also includes a request to reopen discovery . . ." The court directed counsel to advise the court concerning the status of discovery, however, neither party so advised the court, or filed a formal motion to reopen discovery. In May 1993, Richard sent general discovery requests to Jennifer without seeking the court's permission. Jennifer objected to the requests and the District Court scheduled a hearing on the matter. After considering the parties' arguments, the court ordered that discovery was closed, thereby sustaining Jennifer's objection. Richard claims the court erred in failing to grant him additional discovery time.

We review District Court rulings concerning granting or denying discovery for abuse of discretion. In re Marriage of Caras (1994), 263 Mont. 377, 384, 868 P.2d 615, 619. "Control over pretrial discovery is best exercised by the District Court which is in a better position than this Court to supervise the day to day operations of pretrial discovery." State ex rel. Guar. Ins. v. District Court (1981), 194 Mont. 64, 68, 634 P.2d 648, 650.

Rule 16, M.R.Civ.P., governs court established scheduling orders. According to Rule 16(b), M.R.Civ.P., "[a] schedule shall not be modified except by leave of the judge upon a showing of good cause. " Here, the trial court allowed the parties approximately six months to complete discovery. During this time, Richard never moved to extend the discovery deadline date. After the discovery

10

deadline date had passed, Richard failed to formally advise the court of the status of discovery, or move to reopen discovery. Accordingly, we conclude, that Richard failed to demonstrate he had good cause to modify the discovery order, and hold that the District Court did not abuse its discretion in adhering to its discovery order.

AFFIRMED.

_____
                                        Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
        Justices

11