No. 96-686

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

IN RE MARRIAGE OF

MARILYN BETH JOHNSON,

        Petitioner and Appellant,

  and

NORMAN MARTIN JOHNSON,

        Respondent and Respondent.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                 In and for the County of Gallatin,
                 The Honorable Larry W. Moran, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                John P. Atkins, Attorney at Law, Bozeman, Montana

        For Respondent:

                Kent M. Kasting; Kasting, Combs & Kauffman;
                Bozeman, Montana

Submitted on Briefs: May 1, 1997

Decided: June 26, 1997

**FILED**

JUN 26 1997

Filed:

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

The respondent, Norman Martin Johnson, filed a motion in the District Court for the Eighteenth Judicial District in Gallatin County in which he requested the District Court to order the appellant, Marilyn Beth Johnson, to execute a satisfaction of judgment. After a hearing, the District Court granted that motion. Marilyn appeals. We affirm the judgment of the District Court.

The issue on appeal is whether the District Court abused its discretion when it granted Norman's motion and ordered Marilyn to execute a satisfaction of judgment.

## FACTUAL BACKGROUND

On March 8, 1996, the District Court entered its decree which dissolved the parties marriage. The decree incorporated the District Court's findings of fact and conclusions of law which had previously been issued on February 26, 1996. Finding of Fact No. 32 provides, in relevant part, as follows:

> Considering the unequal distribution of the marital estate . . . the Court finds that [Norman] can well afford to pay some cash to provide [Marilyn] some liquidity and to more equally and equitably divide the marital estate. To accomplish this objective, the Court finds that [Norman] should pay [Marilyn] the cash sum of $50,000.00 within 30 days of the Entry of Decree . . . .

(Emphasis added.) Neither party moved to amend the District Court's findings of fact and conclusions of law, nor did either party appeal from the final decree of dissolution.

Subsequently, Marilyn demanded payment of the $50,000. Norman, however, claimed that he satisfied his financial obligation and, on that basis, requested a satisfaction of judgment from Marilyn. After she refused, he filed a post-decree motion in which he requested the District Court to order her to execute a satisfaction of judgment. Although the parties agree that Norman is entitled to a credit of $28,910 against the $50,000 he owes Marilyn, they dispute the remaining balance of $21,090. Their dispute involves three assets: (1) an Elkhart Travel Trailer; (2) Marilyn's $5,000 checking account; and (3) household goods valued at $4,090.

### The Elkhart Travel Trailer

At trial, the parties stipulated that the value of their trailer is $13,400. Norman also authorized Marilyn to sell the trailer. After trial, but before the District Court issued its findings of fact and conclusions of law, she sold the trailer for $8,000 and retained the proceeds.

The District Court, in Findings of Fact Nos. 26 and 31, valued the trailer at $13,400 and awarded it to Norman. On that basis, he asserted that he is entitled to a credit for that amount; however, he is willing to accept a credit of $12,000, which represents the fair market value of the trailer at the time of sale. He also claimed that Marilyn failed to obtain his consent, as required by their agreement, before she sold the trailer.

3

Marilyn, on the other hand, submitted an affidavit in which she stated that, based on the damaged condition of the trailer, she was unable to sell it for $13,400 or even $12,000. She claimed that she made a reasonable and good faith effort to sell the trailer in accordance with the parties' agreement and, therefore, that Norman is only entitled to a credit of $8,000, the amount for which the trailer was actually sold.

## Marilyn's $5,000 Checking Account

The District Court, in Finding of Fact No. 31, awarded Norman "Petitioner's checking account" in the amount of $5,000. On that basis, Norman claimed that since Marilyn retained the $5,000 in her checking account, he is entitled to a credit for that amount.

Marilyn asserted that Finding of Fact No. 26, which sets forth the parties' marital estate, does not include her checking account as a marital asset subject to distribution and, therefore, that the District Court erred when, pursuant to Finding of Fact No. 31, it awarded "Petitioner's checking account" to Norman. Furthermore, she contended that the $5,000 in her checking account at the time of trial was money that Norman previously paid to her in the form of temporary maintenance. It would, therefore, be inequitable to require Norman to pay her temporary maintenance and then to divide that money between the parties.

## The Household Goods Valued at $4,090

The District Court, in Finding of Fact No. 31, awarded Norman household goods valued at $9,940. Norman, however, asserted that the parties agreed at trial, on the record, as to the method of distributing those goods. The terms of their alleged agreement provided

4

his $50,000 obligation owed to her because he: (1) should only receive a credit in the amount of $8,000, and not $12,000, for the sale of the trailer; (2) should not receive a credit for the $5,000 in her checking account; and (3) should not receive a credit for the household goods valued at $4,090. In support of her contentions, she recites the same arguments that were presented to the District Court.

We conclude that when the District Court granted Norman's motion, it was, in effect, merely interpreting and enforcing the dissolution decree. Therefore, Marilyn's objections are, in essence, an attack on the underlying dissolution decree.

The standard of review in marital property distribution cases is whether the district court's findings of fact are clearly erroneous. If substantial credible evidence supports the district court's findings and judgment, then the judgment will be affirmed unless the district court abused its discretion. *In re Marriage of Smith* (1995), 270 Mont. 263, 267-68, 891 P.2d 522, 525; *In re Marriage of Rock* (1993), 257 Mont. 476, 479-80, 850 P.2d 296, 298.

District courts are vested with broad discretion to distribute the marital estate and are "obligated to fashion a distribution which is equitable to each party under the circumstances. Working in equity, the courts must seek a fair distribution of the marital property using reasonable judgment and relying on common sense." *Rock*, 257 Mont. at 480, 850 P.2d at 298 (citation omitted). The test for abuse of discretion in dissolution proceedings is "whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *In re Marriage of Meeks* (1996), 276

6

Mont. 237, 242, 915 P.2d 831, 834. Finally, we recognize the well-established principle that district courts are in the best position to weigh the evidence, judge the credibility of witnesses, and resolve conflicts in the evidence. *See In re Marriage of Tidball* (1981), 192 Mont. 1, 5-7, 625 P.2d 1147, 1150; *Murphy v. Murphy* (1959), 134 Mont. 594, 598, 335 P.2d 296, 298.

Initially, we note that Marilyn failed to file a transcript of the proceedings below. Therefore, we are not in a position to address fact-based arguments. Furthermore, although Marilyn claims that the trailer was not worth $12,000, and that her checking account should not have been distributed to Norman, she did not appeal the District Court's decree which found or held otherwise. We are limited to consideration of whether the District Court's post-trial interpretation and enforcement of its decree was an abuse of its discretion.

We conclude that the District Court's post-decree order is consistent with the dissolution decree and represents a reasonable and common-sense approach to enforcement of the decree. Accordingly, we hold that the District Court did not abuse its discretion when it granted Norman's post-decree motion and ordered Marilyn to execute a satisfaction of judgment. The judgment of the District Court is affirmed.

_____
Justice

We Concur:

7

_William E. Hunt Sr._

_Jim Reynier_

_W. William Leaphart_

Justices

8

Justice James C. Nelson dissenting:

I dissent. I disagree that Marilyn's objections were an attack on the underlying dissolution decree. Rather, she was simply trying to get the District Court to enforce the underlying decree as written. If any party was trying to undo and to collaterally attack the decree it was Norman, and, unfortunately, he has now been successful in depriving Marilyn of the benefit of the final property settlement which was awarded to her.

First of all, as to the matter of there being no transcript, I conclude that this is a non-issue. The appeal here is from a post-trial order. At the hearing which preceded the order there was no testimony and no evidence presented. The hearing consisted only of the arguments of counsel, and Marilyn's unrefuted affidavit was made a part of the record. Accordingly, a transcript of the proceedings would be meaningless. More importantly, Marilyn's counsel advised Norman's counsel by letter on October 3, 1996, of his intention not to order a transcript of the July 25, 1996 hearing. Under Rule 9(b), M.R.App.P., Norman's remedy on being advised that Marilyn was not going to order a transcript was to request or demand a transcript and to seek relief from the trial court on that issue before the appeal. There was no necessity for a transcript of the underlying trial as neither party appealed the trial court's findings of fact, conclusions of law and decree. Accordingly, whatever mistakes or errors may be in the underlying findings and conclusions, both parties are stuck with them.

As to the substantive issues, I agree with Marilyn that Norman's offset on the Elkhart

9

travel trailer should be $8,000. Regardless of how it was valued for purposes of the underlying decree and regardless of what Norman might have thought it was worth, when the trailer was actually sold, with his agreement, it only brought $8,000. Marilyn sold the trailer for Norman to accommodate his being in New York and the trailer being located in Bozeman. Marilyn's unrefuted affidavit establishes that the $8,000 offer was the only offer made and that this offer was reasonable given the condition of the trailer and its need for refurbishing and repair.

The written stipulation of the parties filed July 25, 1995, empowers Marilyn to sell the trailer. There is nothing in that agreement that would effectively bind Marilyn to bear any loss on the sale. On the contrary, it authorizes Marilyn to make any necessary repairs to the trailer, deduct the costs from the proceeds of the sale, and retain the remaining net proceeds as an advance against any property settlement. This is, in effect, what she has done. Accordingly, and aside from noting that no good deed goes unpunished, I would reverse the District Court's determination that Norman should receive an offset of $12,000.

Similarly, with regard to the $4,090 household goods offset, I would reverse. The court awarded Norman the household goods at issue; Marilyn did not want them and should not now be obligated to give Norman an offset for goods awarded to him. There is absolutely nothing in the record that supports Norman's contention that the parties stipulated that Marilyn would accept $4,090 of his household goods as a credit against the money judgment awarded in favor of Marilyn. Accordingly, I would reverse the $4,090 offset to Norman.

10

Finally, as to the $5,000 checking account, this issue is a bit more problematic. I again suggest, however, that since the trial court's findings of fact, conclusions of law and decree in the underlying action were not appealed, the parties are stuck with whatever those provide, right or wrong. On the one hand, as pointed out by Marilyn, the trial court did not include at finding of fact 26 in the underlying decision her checking account as a marital asset subject to distribution. There is no explanation as to why the court failed to do so. On the other hand, as pointed out by Norman, the court did award him "Petitioner's [Marilyn's] checking account" under finding of fact 31. Finding of fact 19 does conclude that certain amounts paid by Norman to Marilyn were to be considered temporary maintenance, but that finding does not specifically indicate that the $5,000 checking account at issue was funded with such temporary maintenance.

On this state of the underlying record, I suggest that we must focus on what was before the court at the post-judgment hearing. The record there basically consisted of Marilyn's unrefuted affidavit. Her affidavit at paragraph 9, states that the $5,000 in the checking account was part of the $34,000 temporary maintenance payments made by Norman prior to trial. On the proposition that temporary maintenance awarded by the court clearly belonged to her and was for her support, I conclude that the court thereafter was in no position to take back from Marilyn that which it had already awarded to her. I would reverse the award of the $5,000 checking account to Norman.

I would hold that the District Court improperly modified the underlying final decree,

11

and I would reverse the trial court's post-decree order and remand for entry of an order consistent with this dissent.

_____
Justice

Chief Justice J. A. Turnage:

I join in the dissent of Justice Nelson.

_____
Chief Justice

12

Justice Karla M. Gray, concurring in part and dissenting in part.

I concur in the Court's opinion with regard to the Elkhart travel trailer and Marilyn's $5,000 checking account. If Marilyn was dissatisfied with the underlying findings of the District Court relating to those two items, she was obligated to appeal those findings after entry of the decree of dissolution. She did not do so and it is my view that she cannot now be allowed to try to change those findings, by uncontroverted affidavit or otherwise.

With regard to the dispute over household goods valued at $4,090, I join in Justice Nelson's dissent. Norman was awarded these household goods via the findings of fact and decree of dissolution. Nothing of record substantiates his contention that the parties entered into an agreement whereby Marilyn would receive those goods in the event she received a certain parcel of real property. What Norman seeks here is to force Marilyn to keep household goods she does not want and, in so doing, to receive a credit against the amounts due her via the decree. I cannot agree.

As a result of my position on the three items at issue here, I would reverse the District Court's grant of Norman's request for an order requiring Marilyn to execute a satisfaction of judgment. By my reckoning, he still owes her $4,090 and, until that amount is paid, he is not entitled to the execution of a satisfaction of judgment.

_____
                Justice