No. 99-012

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 242N

IN RE THE MARRIAGE OF

SCOTT E. MEYERS,

Petitioner and Appellant,

and

DIANA L. MEYERS,

Respondent and Respondent.

APPEAL FROM: District Court of the Twelfth Judicial District,

In and for the County of Hill,

The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Daniel A. Boucher; Altman & Boucher, Havre, Montana

For Respondent:

Diana Lachman Meyers, *Pro Se*, Havre, Montana

Submitted on Briefs: June 17, 1999

Decided: October 14, 1999

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶ **Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

¶ Scott E. Meyers (Scott) appeals from the decision of the District Court for the Twelfth Judicial District, Hill County, dissolving his marriage to Diana L. Meyers (Diana), distributing the marital property, and awarding maintenance to Diana. This Court dismissed Diana's cross-appeal because notice of cross-appeal was not timely filed. We affirm in part and reverse and remand in part.

Issues

¶ 1. Did the District Court err in awarding Diana half of the equity in the Havre house?

¶ 2. Did the District Court err in holding Scott responsible for the mortgage, insurance, and tax payments while Diana occupies the Havre house until August 2000?

¶ 3. Did the District Court err in awarding maintenance to Diana until December 2000?

¶ Because Diana's cross-appeal was dismissed, we are precluded from addressing the issues she raises in her respondent's brief to the extent they constitute a cross-appeal.

Standard of Review

¶ The standard of review of a district court's division of marital property is whether the court's findings of fact are clearly erroneous. If substantial credible evidence supports the court's findings and judgment, this Court will not change the district court's decision unless the court abused its discretion. *See* In re Marriage of Smith (1995), 270 Mont. 263, 267-68, 891 P.2d 522, 525 (citation omitted).

¶ The standard of review for maintenance awards is whether the district court's findings are clearly erroneous. *See* In re Marriage of Smith (1995), 270 Mont. 263, 269, 891 P.2d 522, 526 (citations omitted).

Background

¶ **Scott and Diana were married in Havre, Montana in 1991. Shortly before the marriage, Scott purchased a house in Havre (Havre house) with a $20,000 downpayment gifted to him by his family. Scott and Diana separated and Scott petitioned for dissolution of their marriage in 1997. After a trial, the District Court issued its findings of fact, conclusions of law, and decree. Scott appeals from the portions of the District Court's decree awarding Diana half of the equity in the Havre house, holding Scott responsible for the mortgage, insurance, and tax payments while Diana occupies the house until August 2000, and awarding maintenance to Diana until December 2000.**

Discussion

¶ **1. Did the District Court err in awarding Diana half of the equity in the Havre house?**

¶ **The District Court found that the total equity in the Havre house amounted to $25,000, which reflected Scott's initial downpayment of $20,000 and the mortgage payments made since the purchase of the house. The value of the house had not increased during the parties' marriage. The District Court awarded Diana $12,500 of the equity in the Havre house.**

¶ **The distribution of property is governed by § 40-4-202, MCA, which provides in pertinent part:**

> (1) In dividing property acquired prior to the marriage; property acquired by gift, bequest, devise, or descent; . . . the court shall consider those contributions of the other spouse to the marriage, including:
>
> (a) the nonmonetary contribution of a homemaker; (b) the extent to which such contributions have facilitated the maintenance of this property; and (c) whether or not the property division serves as an alternative to maintenance arrangements.

Interpreting this statute, we have held that "preacquired or gifted property need not be included in the marital estate unless the nonacquiring spouse contributed to its preservation or appreciation." In re Marriage of Engen, 1998 MT 153, ¶ 29, 289 Mont. 299, ¶ 29, 961 P.2d 738, ¶ 29. We have also held that if gifted or preacquired assets have

not appreciated during a marriage, their value at the dissolution of the marriage cannot be considered a contribution from the marital effort. *See* In re Marriage of Balsam (1979), 180 Mont. 129, 134, 589 P.2d 652, 654; In re Marriage of Goodman (1986), 222 Mont. 446, 449, 723 P.2d 219, 221.

¶ **Here, the District Court found that Scott and Diana should share equally in the equity of the Havre house because they had lived together as a family and therefore had to have contributed to each other's material needs. While that may be true, $20,000 of the house's equity is Scott's separate property and cannot be considered a product of Diana's contribution to the marriage because the house did not appreciate in value during the marriage. The $5,000 of additional equity, however, can be considered a product of Diana's contribution to the marriage to the extent it accumulated during the marriage. Scott and Diana should thus share equally in that portion of the house's equity accumulated during their marriage.**

¶ **Under § 40-4-202, MCA, and our case law interpreting that statute, we determine that Diana was only entitled to half of the $5,000 equity in the Havre house to the extent it was accumulated during the marriage. We therefore hold that the District Court erred in awarding Diana half of the entire $25,000 equity in the house. We reverse on this issue.**

¶ **2. Did the District Court err in holding Scott responsible for the mortgage, insurance, and tax payments while Diana occupies the Havre house until August 2000?**

¶ **Scott argues that by holding him responsible for the mortgage, insurance, and tax payments on the Havre house while Diana occupies it, the District Court impermissibly created an interest in property where none existed and then distributed the nonexistent property. Scott bases this argument on the assertion that the court labeled this financial obligation a part of the disposition of the marital estate. In actuality, the District Court labeled Diana's two-year estate in the Havre house a part of the disposition of the marital estate, distinguishing it from an award of maintenance.**

¶ **Scott's responsibility for the mortgage, insurance, and tax payments is not part of the distribution of the marital estate, but merely his preexisting and continuing obligation to maintain his property. Especially in light of our holding that Diana is**

only entitled to half of the house's equity accumulated during the marriage, Scott's financial obligation does not constitute a division of property or payment for Diana's benefit. Scott is responsible for the mortgage, insurance, and tax payments to preserve his interest in the property.

¶ We hold that the District Court properly determined and correctly concluded that Scott should be responsible for the mortgage, insurance, and tax payments on the Havre house while Diana resides therein until August 2000.

¶ 3. Did the District Court err in awarding maintenance to Diana until December 2000?

¶ Diana holds a Bachelor and a Master of Science in Nursing and had been steadily employed in that field since 1974. In 1997 she was discharged from her most recent position. She is licensed as a registered nurse in Montana. The District Court found that Diana is capable of earning at least $35,000 per year. The District Court nevertheless awarded Diana temporary maintenance until December 2000 because it would take her "some time to find appropriate employment." The maintenance payments were set to begin at $800 monthly, decrease to $600 in January 1998, and further decrease to $300 in September 2000.

¶ Section 40-4-203, MCA, governing maintenance, provides in pertinent part:

> In a proceeding for dissolution of marriage . . . the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

(a) lacks sufficient property to provide for his reasonable needs; and

> (b) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

An award of maintenance is dependent upon satisfying the threshold requirements under § 40-4-203(1), MCA, that Diana lacks sufficient property to provide for her reasonable needs and is unable to support herself through appropriate employment. *See*, *e.g.*, In re Marriage of Doolittle (1994), 265 Mont. 168, 172, 875 P.2d 331, 334.

No

¶ In this case, the threshold requirement that Diana is unable to support herself through appropriate employment has not been satisfied. The District Court found that Diana would presently be able to work in the nursing profession. While Diana may be reluctant to leave Havre, the record shows that Diana is highly qualified in the field of nursing and is presently capable of obtaining appropriate employment. The District Court's award of temporary maintenance because it will take Diana some time to find appropriate employment does not satisfy the threshold requirements under § 40-4-203(1), MCA, and finds no support in the record. Diana had been unemployed for fourteen months prior to the trial. She claims that she is unable to obtain appropriate employment in Havre and the surrounding areas because of the lack of jobs in the area and because she has been ostracized by the employment community in response to a wrongful discharge suit she has filed against a former employer. If Diana's characterizations of her employability in Havre are accurate, over two years of maintenance payments will not assist Diana in procuring employment in Havre. The District Court found that Diana was presently capable of working in the nursing profession and supporting herself. The court's award of maintenance was clearly erroneous because the threshold requirement under § 40-4-203(1)(b), MCA, that Diana is unable to support herself through appropriate employment, has not been satisfied.

¶ Under § 40-4-203, MCA, we determine that an award of maintenance is not appropriate because Diana is able to support herself. We hold that the District Court erred in ordering Scott to pay maintenance to Diana until December 2000.

¶ Affirmed in part, reversed in part and remanded to the District Court for further proceedings consistent with this Opinion.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ WILLIAM E. HUNT, SR.

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY