No. 98-541

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 218

295 Mont. 546

986 P.2d 408

IN RE THE MARRIAGE OF

JANET KENNY DAVIS,

Petitioner and Respondent,

and

ROYAL A. DAVIS, JR.,

Respondent and Appellant.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John L. Hollow, Attorney at Law; Helena, Montana

For Respondent:

Dennis G. Loveless, Attorney at Law; Helena, Montana

_____

Submitted on Briefs: March 11, 1999

Decided: September 14, 1999

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

1. ¶After nearly 20 years of marriage, Janet Kenny Davis filed a petition for dissolution in the First Judicial District Court, Lewis and Clark County. Following a hearing on the merits, the District Court set forth its division of marital property in its findings of fact and conclusions of law, which were incorporated in the Decree of Dissolution. Royal A. Davis appeals from the property distribution contained in the District Court's Findings of Fact and Conclusions of Law dated June 24, 1998, and the Decree of Dissolution dated June 26, 1998. We affirm.

2. ¶Royal raises the following issues:

3. ¶1. Did the District Court err when it included the entire appraised value of the family residence in the marital estate rather than the appreciation in value accrued during the marriage?

4. ¶2. Did the District Court err when it declined to admit a quitclaim deed dated June 8, 1990, from Royal to his mother?

5. ¶3. Did the District Court err when it did not make specific findings concerning the share of appreciation in value of the family residence that could be attributed to Janet's contributions?

6. ¶Based on our resolution of the first issue, we do not consider the second and third issues in detail.


## FACTUAL AND PROCEDURAL BACKGROUND

1. ¶Janet and Royal Davis were married on June 16, 1978. Upon their marriage, the couple moved into the home of Royal's mother, Martha Davis, at 1400 North Benton in Helena, Montana. Almost immediately, the couple began personally remodeling the home to enable Martha, who was in poor health, to continue to reside in the home. They put in a kitchen and dining room downstairs, expanded the bathroom, painted, tore out old carpeting, and refinished the wood floors. Later in the marriage, the couple built a garage on the property.

2. ¶Royal originally purchased the home at 1400 North Benton in 1975, together with his previous wife, Norma, and his mother, Martha. After the dissolution of Royal's marriage to Norma in 1976, the interest in the house was sold to Martha on November 5, 1976.

3. ¶On April 10, 1990, Martha quitclaimed her interest in the property to Royal, reserving a life estate for herself. This Quitclaim Deed was recorded in the Lewis &

Clark County Clerk and Recorder's Office on May 22, 1990. Despite conveying the property to Royal in 1990, Martha paid the mortgage, insurance, taxes, and utilities associated with the property from 1976 until her death in August 1994. Thereafter, Royal and Janet assumed responsibility for the payments associated with ownership of the home.

4. ¶During the hearing conducted on March 25, 1998, Royal attempted to introduce a Quitclaim Deed dated June 8, 1990, purporting to transfer the property back to Martha and to reserve a life estate for himself and his heirs and assigns. The District Court refused to allow the deed into evidence on the basis that the deed had not been recorded. The District Court went on to declare that the property had been titled in Royal's name since 1990.

5. ¶During the lunch recess, Royal recorded the June 8, 1990 Quitclaim Deed. Once the hearing reconvened, Royal again attempted to offer the deed into evidence. The District Court refused to allow the deed into evidence and requested that the parties brief the issue after the hearing. The District Court ultimately found that the deed, if ever delivered to Martha, was not recorded during her lifetime.

6. ¶The couple resided in the home, along with Martha and their two children, throughout the duration of their marriage, with the exception of a period of approximately two years when the couple lived in Florida. In addition, beginning in approximately 1986, a friend of Royal's resided in the home rent-free from approximately May through October of each year, contributing only minimally toward the purchase of groceries.

7. ¶Janet maintained regular employment during the marriage and is currently employed as a secretary for the nursing department at Carroll College. Royal's employment during the marriage was sporadic with a lengthy period of unemployment from approximately 1986 to 1996. In addition to being the primary wage earner, Janet performed most of the housekeeping chores, cooking for the family, and maintaining the household.

8. ¶Royal has disabilities for which he receives SSI payments, which are reduced commensurate with the amount of income he earns. In addition, Royal was provided SRS funds to attend law school from 1992 to 1995. Royal is presently employed at the office of a local attorney under a fee splitting arrangement, which has provided him with relatively little income. Royal also has a federal firearms license under which he has conducted a firearms business that has not generated any income.

9. ¶For much of the time she lived with Janet and Royal, Martha was in poor health. At one point, the condition of her health was such that it was recommended that Martha be placed in a nursing home. Consequently, Janet was required to prepare meals,

clean, shop, and do laundry for Martha, particularly during the time Royal attended law school. In addition, staff from West Mont provided Martha with in-home health care.

10. ¶After 19 years of marriage, the couple separated on July 1, 1997. On August 15, 1997, Janet filed a petition for dissolution of marriage in the First Judicial District Court, Lewis and Clark County. After a hearing on the merits, the District Court entered a decree of dissolution on June 26, 1998, incorporating its findings of fact and conclusions of law dated June 24, 1998.

11. ¶The District Court concluded that the home located at 1400 North Benton was a marital asset and required Royal to pay to Janet the sum of $35,000 by a certain date or, in the alternative, list the property for sale and pay to Janet 45 percent of the sale proceeds. The appraised value of the house at the time the parties separated was $86,300.

12. ¶In reaching its determination, the District Court found it significant that the family had lived in the home for most of the marriage; that Janet had made contributions to the marriage as the primary wage earner and homemaker; and that Janet had helped care for Royal's ailing mother. The District Court ultimately concluded that Janet's contributions to the marriage had facilitated the maintenance of the property.

13. ¶On June 26, 1998, the District Court entered a decree of dissolution, incorporating its findings of fact and conclusions of law. Royal filed a Motion to Stay, Notice of Appeal and Certification of Mediation on July 23, 1998. No resolution was achieved through mediation, pursuant to Rule 54 of the Montana Rules of Appellate Procedure. On November 17, 1998, this Court issued an order granting a stay from the decree on the condition that the home not be transferred or further encumbered pending appeal.

## STANDARD OF REVIEW

1. ¶We review the division of marital property by a district court to determine whether the findings upon which the district court relied are clearly erroneous. *In re Marriage of Engen*, 1998 MT 153, ¶ 26, 289 Mont. 299, ¶ 26, 961 P.2d 738, ¶ 26; *In re Marriage of Foreman*, 1999 MT 89, ¶ 14, 979 P.2d 193, ¶ 14, 56 St.Rep. 373, ¶ 14, (citations omitted). "If the findings are not clearly erroneous, we will affirm the distribution of property unless the district court abused its discretion." *Engen*, ¶ 26 (citations omitted). The test for abuse of discretion in a dissolution proceeding is "whether the district court acted arbitrarily without employment of conscientious judgment" or whether the district court "exceeded the bounds of reason resulting in

substantial injustice." *Engen*, ¶ 26 (citation omitted).

## ISSUE 1

1. ¶Did the District Court err when it included the entire appraised value of the family residence in the marital estate rather than the appreciation in value accrued during the marriage?

2. ¶Royal contends that the District Court either misapprehended the effect of the evidence, misapprehended the law, or abused its discretion when it ordered him to pay to Janet the sum of $35,000. Royal argues that he and Janet should not share equally in the total value of the home since it came from his mother. Royal urges the Court to vacate the property division of the District Court and distribute only the postinheritance appreciation in the value of the home due to marital effort, if any.

3. ¶Regardless of whether the family residence passed to Royal by gift in 1990 or by inheritance in 1994, the applicable statutory criteria for dividing the property is the same. § 40-4-202(1)(a)-(c), MCA. Section 40-4-202(1), MCA, provides that:

In dividing property . . . acquired by gift, bequest, devise, or descent . . . , *the court shall consider those contributions of the other spouse to the marriage*, *including*:

(a) the nonmonetary contribution of a homemaker;

(b) the extent to which such contributions have facilitated the maintenance of this property; and

(c) whether or not the property division serves as an alternative to

maintenance arrangements.

§ 40-4-202(1), MCA (emphasis added). In addition, § 40-4-202(1), MCA, directs the court

to "equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or the wife or both."

1. ¶Royal argues that case law requires the value of the house included in the marital estate to be limited to its appreciated value. Upon our review of the recent case law pertaining to the division of gifted or inherited marital property, we disagree.
2. ¶In *Engen*, we recognized that we previously construed § 40-4-202, MCA, to mean that regardless of who holds title, preacquired or gifted property need not be included in the marital estate unless the nonacquiring spouse contributed to its preservation or appreciation. *Engen*, ¶ 29. We went on to state that:

In that event, we have held that the nonacquiring spouse is entitled to an equitable share of the appreciated or preserved value which is attributable to his or her efforts.

*Engen, ¶ 29; Foreman, ¶ 26.*

1. ¶The District Court found that Janet's contributions to the marriage were significant. While it is true that Janet did not make any mortgage, tax, insurance, or utility payments associated with the house while Royal's mother was alive, the record demonstrates that Janet's contributions helped maintain and preserve the house. Janet contributed her income from regular employment throughout the marriage to maintenance of the household and improvements as well as to the necessaries of life for the family. In addition, Janet's income was used to supplement Royal's SSI checks and his minimal income toward payment of the mortgage, taxes, insurance, and utilities after his mother's death until their separation.
2. ¶Moreover, the District Court properly considered Janet's contributions as caretaker and homemaker in the division of the marital property. *See* § 40-4-202(1)(a) and (b), MCA. Janet's care of Royal's ailing mother, Martha, enabled Martha to remain in the home, allowing her to avoid having to sell the home to meet the expenses of placement in a nursing home.
3. ¶As a result, we conclude that the District Court did not err when it found Janet's contributions to the marriage facilitated the maintenance and preservation of the family residence, entitling her to an equitable share of the preserved value. This is true whether we consider the contributions she made after the house passed to Royal, in 1990 or 1994, or during all the years of the couple's marriage.

4. ¶Therefore, we hold that the District Court properly included the total value of the house in the marital estate and that it did not abuse its discretion when it equitably apportioned the property between the parties.

## ISSUE 2

1. ¶Did the District Court err when it declined to admit a quitclaim deed dated June 8, 1990, from Royal to his mother?

Martha transferred the house to Royal by quitclaim deed on April 10, 1990, and reserved a life estate for herself. Royal alleges that he conveyed the house back to Martha by a quitclaim deed dated June 8, 1990, that was signed and notarized. The District Court refused to admit the deed into evidence because it had not been recorded. Royal then recorded the deed during the lunch recess of the dissolution hearing. After the hearing reconvened, Royal again attempted to admit the deed into evidence without success.

1. ¶Royal argues that the District Court should have admitted the deed into evidence and calculated the house's appreciation in value due to Janet's contributions to the marriage from the date of inheritance and include only that amount in the marital estate. Based on our conclusion that the total value of the house is includable in the marital estate, however, we do not need to consider this issue in detail. As previously stated, the statutory criteria for division of marital property whether acquired by gift or inheritance is the same. Thus, failure to admit the deed into evidence is irrelevant with respect to the equitable apportionment of marital property under § 40-4-202(1), MCA.

## ISSUE 3

1. ¶Did the District Court err when it did not make specific findings concerning the share of appreciation in value of the family residence that could be attributed to Janet's contributions?
2. ¶Royal contends that the District Court's findings of fact concerning Janet's contributions to the maintenance or appreciation of the house after it passed to Royal and the portion of the appreciation that was attributable to her were not specific enough to support its conclusion. However, we have already recognized that the District Court's findings regarding Janet's contributions to the marriage as the primary wage earner, caretaker, and homemaker were sufficient. These findings are

not clearly erroneous, are supported by substantial evidence, and are sufficient to support the District Court's division of the family residence.

3. ¶Affirmed.


/S/ JIM REGNIER


We Concur:


/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ KARLA M. GRAY


Justice James C. Nelson dissents.


1. ¶I dissent from the Court's decision on Issues 1 and 3 and, therefore, express no opinion as to Issue 2.

2. ¶We have previously held that pursuant to § 40-4-202, MCA, preacquired, gifted, or devised property need not be included in the marital estate unless the nonacquiring spouse contributed to its preservation or appreciation. We have further held that only in the event the nonacquiring spouse did contribute, is the nonacquiring spouse entitled to an equitable share of the appreciated or preserved value *which is attributable to his or her efforts. See In re Marriage of Smith* (1995), 270 Mont. 263, 891 P.2d 522; *In re Marriage of Bradshaw* (1995), 270 Mont. 222, 891 P.2d 506; *In re Marriage of Smith* (1994), 264 Mont. 306, 871 P.2d 884; *In re Marriage*

*of Rock* (1993), 257 Mont. 476, 850 P.2d 296; *In re Marriage of Keedy* (1991), 249 Mont. 47, 813 P.2d 442; *In re Marriage of Gallagher* (1991), 248 Mont. 100, 809 P.2d 579; *In re Marriage of Luisi* (1988), 232 Mont. 243, 756 P.2d 456; *In re Marriage of Fitzmorris* (1987), 229 Mont. 96, 745 P.2d 353; *In re Marriage of Herron* (1980), 186 Mont. 396, 608 P.2d 97.

3. ¶Indeed, in *In re Marriage of Engen,* 1998 MT 153, 289 Mont. 299, 961 P.2d 738, we made a point of analyzing these cases and the rule expressed therein in an attempt "to clarify years of inconsistent and result-oriented decisional law which pertained to the distribution of gifted, inherited, or preacquired property." *In re Marriage of Foreman*, 1999 MT 89, ¶ 45, 979 P.2d 193, ¶ 45, 56 St.Rep. 373, ¶ 45 (Trieweiler, J., dissenting).

Unfortunately, as was the case in *Foreman,* in the case at bar the Court's efforts in *Engen* to bring consistency and rationality to a troublesome, confusing, and litigation-prone area of domestic-relations law have once again been frustrated.

1. ¶Here, while there is evidence that Janet did contribute to the marriage, there is no finding as to what was the value of the family residence at the time of her marriage to Royal; there are no findings as to the value of the appreciated or preserved value [(1)](#) of the property attributable to Janet's efforts; and, consequently, there is no rational basis on which to determine her proper share of the appreciated or preserved value. *Engen*, ¶ 29. More to the point, applying the rule set out in *Engen*, there is no substantial evidentiary basis supporting the court's determination to include the entire value of the family residence in the marital estate and to award Janet $35,000 based upon the recently appraised value of the property at $86,300.

2. ¶I agree with Justice Trieweiler's dissent in *Foreman*. As the majority did in that case, we have once again "simply adopt[ed] the District Court's reasoning without any evidentiary basis for doing so." *Foreman,* ¶ 62, (Trieweiler, J., dissenting). Moreover, we have ignored the clear rule of *Engen* and have, once more, retreated into the inconsistent and result-oriented approach that has plagued and continues to plague the distribution of gifted, inherited or preacquired property in domestic-relations cases.

3. ¶I would reverse and remand for further proceedings and for proper findings as to the value of the family residence at the time of Janet's marriage to Royal; as to the value of the appreciated or preserved value of the property attributable to Janet's efforts; and, as to her share of the appreciated or preserved value as so determined. I dissent from our failure to do so.

## /S/ JAMES C. NELSON

1. It is not even clear from the trial court's findings whether, at the time of the appraisal, the property *had* appreciated in value. In fact, one gets the sense from the court's reference to its poor condition that the property might have depreciated over the course of the marriage.