No. 00-305

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 20N

In Re the MARRIAGE OF JACQUELINE R. MITCHELL,

Petitioner and Appellant,

v.

JOHN S. MITCHELL,

Respondent and Cross-Appellant.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Philip J. O'Connell, Attorney at Law, Missoula, Montana

For Respondent:

David N. Hull, Attorney at Law, Helena, Montana

Submitted on Briefs: December 14, 2000
Decided: February 15, 2001

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 The petitioner, Jacqueline L. Mitchell filed a petition for dissolution of her marriage to the respondent, John S. Mitchell ("Stephen"), in the District Court for the First Judicial District in Lewis and Clark County. Following a non-jury trial, the District Court divided the couple's property by a decree of dissolution based on its findings of fact and conclusions of law. Both parties appeal from the District Court's property distribution. We affirm the judgment of the District Court.

¶3 Both parties present several issues on appeal. We restate these issues as follows:

¶4 (1) Did the District Court err in its distribution of the marital property?

¶5 (2) Did the District Court err when it declined to award Stephen's pension to Jackie after Stephen failed to disclose the pension during discovery?

¶6 (3) Did the District Court err by refusing to vacate the hearing despite Jackie's failure to comply with the District Court's pretrial orders?

¶7 (4) Did the District Court err when it decided not to hold Jackie and/or her counsel in contempt for violating the pre-trial order?

¶8 (5) Did the District Court err when it denied Stephen's motion for sanctions against Jackie for violating the temporary restraining order when she sold the Subaru station wagon?

## FACTUAL BACKGROUND

¶9 Jackie and Stephen Mitchell were married on June 8, 1990. At that time, Jackie was employed by the State of Montana as an administrative assistant in the Department of

Health and Environmental Science. Jackie earned a pension from this job, which amounted to $4,500. Jackie did not own any property or automobiles except for a few home furnishings and personal property. She owed approximately $500 for medical bills which the couple paid while applying for a home loan after they married.

¶10 Since 1971, Stephen was employed by the firm, Ch2M Hill, as a hydrologist and engineering manager and continued to work there during his marriage to Jackie. Upon retirement, Stephen will receive a pension of approximately $700 a month. According to Stephen, he earned this pension in the 1970's. Later, the company converted its pension plan to stock options and other benefits for the employees. He used these stock options after leaving Ch2M Hill in 1994 to start his own company, Clear Creek Hydrology. In 1996, Clear Creek Hydrology was incorporated. In October, 1998, Stephen held 85% of the stock in the company, Jackie held 10% and the remaining five percent was owned by a third party. Rick Townsend, a public accountant, testified that the business was worth a negative $2,195, at the time of trial.

¶11 Prior to the couple's marriage, Stephen owned two homes - one in Montana City, Montana, and the other located in Boise, Idaho. After he married Jackie, he sold them and used the $40,000 equity from the two sales for a down payment on the marital home in Townsend, Montana. The couple paid $143,000 for the property in 1992. The house and property combined are now worth $325,000. However, the property is encumbered by two mortgages in the combined amount of $315,000. Stephen also owned several vehicles and trailers prior to marriage that he traded in to acquire the marital vehicles. The marital vehicles are a Subaru Legacy station wagon, Dodge Ram pick-up truck, GMC Jimmy, two Yamaha Big Wheels, a Honda Fat Cat, a Holiday Rambler fifth wheel, a Nu-Wa Hitchhiker fifth wheel, two utility trailers and a Farmall tractor. The Hitchhiker fifth wheel is encumbered by a debt which the District Court found to be in the amount of $20,000. Stephen and Jackie also own four Pomerarian dogs which are worth $4,000.

¶12 After Stephen created Clear Creek Hydrology, Jackie worked for the company as a bookkeeper and receptionist. She made approximately $12.00 an hour while working at Clear Creek Hydrology. Jackie also attended classes during this period.

¶13 Jackie left Stephen in October of 1998. She moved out of the Townsend property while he was on a hunting trip. Jackie took their bed, kitchen appliances, dishes, a Sony television, a Compaq computer, their four Pomeranian dogs, a sleeping bag, backpack, the Subaru station wagon and her personal possessions. Before she left, she wrote two checks

to herself from the corporate account in the total amount of $10,000 which she claims was owed her for wages. Prior to leaving, Jackie also transferred $14,000 from the business account to the couple's joint checking account. It is unclear who ultimately received that money or whether Stephen directed her to make the transfer. She moved to Boise, Idaho where she presently resides.

## DISCUSSION

## ISSUE ONE

¶14 Did the District Court err in its distribution of the marital property?

¶15 Both parties assert that the District Court distributed the property inequitably. However, they disagree on how the District Court erred. Jackie contends that the Court incorrectly valued certain items, and that she received an inequitable distribution. Stephen, contends that the Subaru station wagon belongs to him. He also asserts that the marital debt was not allocated in the final decree of Dissolution, the Court did not consider the contributions by Stephen to the marital estate and the District Court erred by including corporate assets as part of the marital estate.

¶16 This Court reviews a district court's division of marital property to determine whether the court's factual findings are clearly erroneous. *See In re Marriage of Robinson* (1994), 269 Mont. 293, 297, 888 P.2d 895, 897. A court's findings are clearly erroneous if they are not supported by substantial evidence. If they are not clearly erroneous, we will affirm the distribution unless the district court abused its discretion.

¶17 Pursuant to §40-4-202, MCA, the district court has broad discretion to distribute the marital estate in a manner which is equitable to each party according to the circumstances of each case. This statute sets forth the guidelines for distribution of property as part of a marriage distribution and provides that:

> (1) In a proceeding for dissolution of a marriage . . . the court, without regard to marital misconduct, shall, and in a proceeding for legal separation may, finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both . . . .

Section 40-4-202, MCA.

¶18 Although the district court is bound to make an equitable distribution of the marital estate, the distribution does not have to be equal. The district court explained that it "has not attempted to value the household furnishings and other items of personal property," because the testimony surrounding these items was not helpful. The District Court, however, did evaluate the other personal property in order to make the marital distribution.

¶19 Jackie asserts that the final distribution is unfair, because she received only 30% of the marital estate. The District Court awarded Jackie the proceeds of the sale of the 1996 Subaru station wagon, her State of Montana Retirement Account, the personal property and household furnishings in her possession, the Sony Television and the four Pomeranian dogs. According to Jackie, the total value of these items is $23,500. (However, she has not placed a value on her personal possessions, household furnishings and the Sony television that she took with her when she left the Townsend property). According to Jackie, Stephen's share of the marital estate is worth $52,705.

¶20 Stephen received the Townsend property, the couple's stock in Clear Creek Hydrology, Inc., the 1996 Dodge pickup, the 1987 GMC Jimmy, two 1987 Yamaha Big Wheels, the 1987 Honda Fat Cat, the 1993 Nu-Wa Hitchhiker fifth wheel, two utility trailers, the 1960 Farmall tractor, the proceeds from the sale of the 1991 Holiday Rambler fifth wheel, and the items of household furnishings and personal property in his possession. The Court also directed Stephen to pay for the two loans encumbering the Townsend property as well as the loan secured by the 1993 Nu-Wa fifth wheel.

¶21 The record shows that Stephen started Clear Creek Hydrology with his own money. Without his skills and experience, the company would not function. Furthermore, Stephen provided the down payment for the Townsend property and has been paying the mortgage and maintaining it since Jackie moved from the property. According to the record, Jackie took over $10,000 from the company account even though she knew that there were insufficient funds in the corporate accounts. After reviewing the record and the District Court findings, we conclude that the district court did not abuse its discretion by its distribution of the marital estate to Jackie.

¶22 Stephen also contends that the District Court erred in its marital distribution. His first complaint relates to the allocation of the debt. The district court awarded Stephen both the Townsend Property and the Nu-Wa 5th Wheel, as well as the debt on those two items. We

are unclear why Stephen asserts that no debt allocation was made because it is evidenced in both the Findings of Fact and Conclusions of law as well as in the Decree of Dissolution. Accordingly, we find no error by the District Court in its allocation of debt.

¶23 Next, Stephen contends that the District Court did not factor the amount that Stephen continued to pay toward the loan secured by the Townsend property after the couple separated. However, by distributing both the property and the mortgage debt to Stephen, these payments were appropriately accounted for. Therefore, we conclude that the District Court did not err by omitting any reference to the mortgage payments made by Stephen after the separation.

¶24 Finally, Stephen asserts that the District Court improperly distributed corporate assets as part of the marital estate, contrary to statutory requirements. When Jackie left Stephen, she took a Compaq computer and a Sony television set. Both assets were purchased with corporate funds. However, the District Court ordered Jackie to return only the Compaq computer within 30 days of the decree, stating that "[i]t was purchased by the business and was being used in the business."

¶25 Jackie admitted in her trial testimony that the Sony television was bought with the corporate credit card. Therefore, Stephen contends that as a corporate asset, the television set can not be distributed as part of the marital estate.

¶26 The general rule is that a district court cannot distribute corporate property where the corporation is not a party to the marital dissolution. *In re Marriage of Reich* (1986), 222 Mont. 192, 720 P.2d 286. However, this Court has approved the transfer of corporate property under facts specific to each case. In *Reich*, we approved the district court's distribution of a corporate vehicle to the wife. Again, in *In Re Marriage of Westland* (1993), 257 Mont. 169, 848 P.2d 492, we affirmed the District Court's apportionment of corporate ranch properties as part of the marital property distribution because a significant portion of the land belonged to the parties. *Westland*, 257 Mont. at 171, 848 P.2d at 494.

¶27 Here, the District Court held that "[a]lthough it was acquired by Clear Creek Hydrology, the parties were using it for their personal enjoyment. Furthermore, the value of the TV is probably not very great and since the parties had several other TVS, the Court most likely would have awarded her one of them." We do not find any abuse of discretion by the district court when it allowed Jackie to keep the television already in her possession rather than exchange it for another television owned by the couple.

¶28 Accordingly, after reviewing the record, we conclude that the District Court did not abuse its discretion when it distributed the marital estate.

## ISSUE TWO

¶29 Did the District Court err when it declined to award Stephen's pension to Jackie after Stephen failed to disclose the pension during discovery?

¶30 Jackie contends that Stephen failed to disclose his pension during discovery and therefore, according to §40-4-253, the undisclosed item should be awarded to Jackie. Section 40-4-253, MCA, provides that

> (1) (a) Each party shall serve on the other party a final declaration of disclosure and a current income and expense declaration, executed under penalty of perjury . . . . The failure of a party to disclose an asset or liability on the final declaration of disclosure is presumed to be grounds for the court, without taking into account the equitable division of the marital estate, to award the undisclosed asset to the opposing party . . . .

Section 40-4-253, MCA. The transcripts reveal that Stephen did not disclose the pension that he earned while working at Ch2M Hill during discovery.

> Q. Do you recall being asked the question, I'll quote, "List any pension, profit share, or retirement plan or account listed in your name." Do you recall seeing that question?
>
> A. Now that you bring it up, yes, sir.
>
> Q. Yes. Do you recall that your response was, "I do not have any pension, profit sharing, or retirement plan other than to continue to work until I die."
>
> A. Yes, sir.
>
> Q. And that wasn't true at the time you said it, was it?
>
> A. No, sir.

. . .

Q. (By Mr. O'Connell) Did you identify [the pension] in your financial disclosure filed with the Court last week?

A. No, sir.

Q. Even though you have a right to a pension that will pay 700 something a month at age 65.

A. Sir, that was so long ago, that when I got that, that I flat forgot about that. That was done in the 1970's.

¶31 The district court held that "[a]lthough most, if not all of the pension was earned prior to the marriage, Stephen was aware he had it and he failed to disclose it as required by statute." However, the district court determined that under the circumstances of the case, it would not be appropriate to divest Stephen of his interest in the property.

¶32 Section 40-4-253, MCA, does not require the district court to distribute the undisclosed asset to the other spouse automatically but merely creates a presumption for doing so. In making its determination, the District Court acknowledged that Stephen failed to disclose the pension but weighed his omission against the other facts in the case. The record shows that the pension was earned during the seventies and was not part of the marital estate. In addition, each party failed to completely disclose his or her financial assets to the other spouse. Therefore, we conclude that the district court did not abuse its discretion when it denied Jackie's motion.

### ISSUE THREE

¶33 Did the District Court err by refusing to vacate the hearing despite Jackie's failure to comply with the District Court's pretrial orders?

¶34 Stephen contends that the District Court should have vacated the hearing because Jackie did not turn in her financial disclosures until the morning of the trial. We review this discretionary act to determine whether the district court abused its discretion. *In re Marriage of Davis* 1999 MT 218, 295 Mont. 546, 986 P.2d 408.

¶35 Jackie failed to comply with the pre-trial orders which required that each party

exchange financial disclosures within a sufficient amount of time prior to trial. Since Stephen did not receive his copy of Jackie's financial disclosures until the morning of the trial, he claims that he was unable to properly prepare for the hearing.

¶36 In reaction to Jackie's failure to comply with the pre-trial order, the Court did not allow Jackie to call any witnesses other than herself and Stephen. Therefore, she was unable to refute the testimony of Stephen's accountant, Rick Townsend who testified to the value of the company. Furthermore, the court adopted nearly all of Stephen's Findings of fact. We do not find that Stephen was harmed by Jackie's failure to turn over her financial disclosures. Any delay caused by postponing the hearing would have been unnecessary and unwise for the resolution of this matter. Therefore, we conclude that the District Court did not abuse its discretion when it decided to proceed with the hearing.

ISSUE FOUR

¶37 Did the District Court err when it decided not to hold Jackie and/or her counsel in contempt for violating the pre-trial order?

¶38 Stephen appeals the District Court decision to not hold Jackie in contempt of court for failing to comply with the pre-trial order. She did not turn in a list of witnesses, proposed findings or her financial disclosures until the morning of the hearing. According to the pre-trial order, any failure to do so is a contempt of court.

¶39 A district court has the responsibility to enforce its own orders. *See In re Marriage of Boyer* (1995), 274 Mont. 282, 289, 908 P.2d 665, 669. Contempt of court is a discretionary tool of the court for enforcing compliance with its decisions. *See in re Marriage of Jacobson* (1987), 228 Mont. 458, 464, 743 P.2d 1025, 1028. Therefore, "where a district court has found that there is no such need to enforce compliance with its order or that the actions of a party to not present a challenge to its dignity and authority, we will not reverse its decision absent a blatant abuse of discretion." *In re Marriage of Baer,* 1998 MT 29 ¶45, 287 Mont. 322 ¶45, 954 P.2d 1125 ¶45.

¶40 The District Court held that "Stephen's motion to hold Jackie in contempt and to assess sanctions against her should be denied . . . . Jackie did not file her financial disclosure or her proposed findings of fact and conclusions of law until the day of trial in violation of the statute and the Court's Scheduling Order. That, however, was probably more the fault of her attorney than of Jackie." Based on our review of the record and our

discussion of the previous issue, we conclude that the District Court did not blatantly abuse its discretion when it decided to not hold Jackie in contempt.

## ISSUE FIVE

¶41 Whether the District Court erred in not imposing sanctions for Jackie's sale of the Subaru station wagon in violation of the temporary restraining order?

¶42 The District Court denied Stephen's motion that it impose sanctions against Jackie for selling the Subaru station wagon despite the temporary restraining order prohibiting either party from selling marital assets. Jackie took the Subaru with her when she left the Townsend property and sold it a few months prior to the dissolution hearing.

¶43 The District Court concluded that "[w]hile the Court certainly does not condone this action, sanctions are not appropriate. The primary reason for not imposing sanctions is that it appears Stephen also violated the restraining order by selling the Holiday Rambler fifth wheeler."

¶44 We, conclude that the District Court did not abuse its discretion when it denied Stephen's motion for sanctions.

¶45 We affirm the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

/S/ JIM REGNIER