No. 01-792

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 168

IN RE THE MARRIAGE OF:

DONALD WILLIAM CLARK,

       Petitioner and Appellant,

  and

SHARON DALE CLARK,

       Respondent and Respondent.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula, Cause No. DR-99-493
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

       Paul Neal Cooley, Skelton & Cooley, Missoula, Montana

       For Respondent:

       P. Mars Scott, P. Mars Scott Law Office, Missoula, Montana

Submitted on Briefs:  May 9, 2002

Decided:  June 19, 2003

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Appellant Donald William Clark filed a petition for dissolution of marriage in the Fourth Judicial District Court, Missoula County. A dispute arose between Donald and Respondent, Sharon Dale Clark, as to the distribution of the marital estate. Subsequent to trial, the District Court issued findings of fact and conclusions of law, and amended findings of fact and conclusions of law. Donald appeals. We affirm the judgment of the District Court.

¶2 We restate the issues on appeal as follows:

¶3 1. Did the District Court equitably distribute the real property that Donald acquired prior to his marriage to Sharon?

¶4 2. Did the District Court abuse its discretion when it ordered Donald to pay Sharon's moving expenses?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 Donald William Clark and Sharon Dale Clark were married on November 29, 1996. Prior to their marriage, Donald and Sharon lived together for approximately seven years. On September 10, 1999, Donald filed a petition for dissolution of marriage. A dispute then arose between Donald and Sharon as to the distribution of the marital estate.

¶6 The case proceeded to trial on April 11, 2001. On May 22, 2001, the District Court issued its findings of fact, conclusions of law, dissolution of marriage, and order. Donald subsequently filed a motion requesting that the District Court amend portions of its findings of fact and conclusions of law on May 30, 2001. On July 26, 2001, the District Court issued

2

an order, granting in part, and denying in part, Donald's motion to amend. The District Court then issued its amended findings of fact and conclusions of law that same day. Donald appealed on August 6, 2001.

## STANDARD OF REVIEW

¶7 We review the division of marital property by a district court to determine whether the findings upon which the district court relied are clearly erroneous. *In re Marriage of Davis*, 1999 MT 218, ¶ 20, 295 Mont. 546, ¶ 20, 986 P.2d 408, ¶ 20. If the findings are not clearly erroneous, "we will affirm the distribution of property unless the district court abused its discretion." *Davis*, ¶ 20 (citations omitted). The test for abuse of discretion in a dissolution proceeding is whether the district court "acted arbitrarily without employment of conscientious judgment," or whether the district court "exceeded the bounds of reason resulting in substantial injustice." *Davis*, ¶ 20 (citations omitted).

¶8 We review the District Court's interpretation of the law to determine whether the court's interpretation is correct. *Hayes v. Hayes* (1994), 264 Mont. 350, 352, 871 P.2d 913, 914.

## DISCUSSION

## ISSUE 1

¶9 **Did the District Court equitably distribute the real property that Donald acquired prior to his marriage to Sharon?**

¶10 Donald's marriage to Sharon was his second marriage. In the dissolution of his first marriage, Donald was awarded ownership of a home located on eleven acres of land near

3

Huson, Montana (hereinafter referred to as the Elk Meadows property). At the time Donald acquired the Elk Meadows property its approximate value was $125,000. However, Donald had a mortgage on the property in a sum that exceeded its value.

¶11 Donald and Sharon moved onto the Elk Meadows property in 1990. Sharon then began making improvements to both the home and its surrounding property. These improvements were substantial, and the District Court found that Sharon's efforts constituted "a major contribution to increasing the value of the Elk Meadows property."

¶12 As we noted above, Donald and Sharon were married on November 29, 1996. On October 14, 1997, seven years after Sharon moved onto the Elk Meadows property, the property was reappraised and assigned an approximate value of $324,000. Donald filed a petition for dissolution of marriage on September 10, 1999. In its distribution of the marital estate, the District Court awarded Sharon one-half of the net proceeds from the sale of the Elk Meadows property. The Elk Meadows property ultimately sold for $348,000.

¶13 On appeal, Donald does not dispute the District Court's finding that Sharon's efforts substantially increased the value of the Elk Meadows property. Rather, Donald contends that because he and Sharon were not married at the time Sharon improved the Elk Meadows property, her efforts should not have been considered in the distribution of the marital estate.

¶14 This Court addressed a similar situation in *In re Marriage of Rolf*, 2000 MT 361, 303 Mont. 349, 16 P.3d 345. In *Rolf*, the parties began living together in February of 1994, and married in November of 1996. *Rolf*, ¶¶ 7, 9. The husband then filed for dissolution in February of 1998. *Rolf*, ¶ 14. In considering the division of the marital estate, the District

4

Court noted that "it would be wholly inequitable for the Court to disregard the relationship of the parties as it existed from February of 1994 and especially from June, 1995[,] when the parties relocated to Florence, Montana." *Rolf*, ¶ 33. As such, the District Court awarded the wife $80,000 of the value of the home in Florence, Montana, that the husband had purchased in 1995. *Rolf*, ¶¶ 7-8, 17.

¶15 The husband appealed, asserting that, in making its property division, the District Court had erroneously included a period of premarital cohabitation within the term of the marriage. *Rolf*, ¶ 31. We examined the husband's claim and noted that: "[W]hile it would be inappropriate to consider the parties' premarital cohabitation as part of the term of the marriage itself, it was necessary in this case for the District Court to consider the parties' premarital history to aid in determining which party brought what assets into the marriage." *Rolf*, ¶ 36. Consequently, we concluded that the District Court did not err in considering the parties' premarital cohabitation in apportioning the marital estate.

¶16 In the instant case, Donald and Sharon began living together on the Elk Meadows property in 1990, and Sharon immediately began making improvements to the property. The effect of Sharon's efforts is evidenced by the property's increase in value from $125,000 in 1990 to $324,000 in 1997. However, because Donald and Sharon did not marry until 1996, the bulk of the improvements to the Elk Meadows property were made during Donald and Sharon's premarital cohabitation. Accordingly, we conclude as we did in *Rolf* that, under the facts of this case, it would be inequitable to disregard Donald and Sharon's premarital cohabitation when considering Sharon's contributions to the marital estate. Therefore, we

hold that the District Court did not err in considering Donald and Sharon's premarital cohabitation in its distribution of the marital estate.

¶17    Donald further alleges that even if the District Court properly considered Sharon's premarital improvements to the Elk Meadows property, the District Court abused its discretion when it awarded Sharon one-half of the net proceeds from the sale of the property. Section 40-4-202, MCA (1997), sets forth the guidelines for distributing preacquired or gifted property as part of a marriage dissolution.  Section 40-4-202, MCA (1997), provides, in pertinent part:

> In dividing property acquired prior to the marriage; property acquired by gift, bequest, devise, or descent; property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent; the increased value of property acquired prior to marriage; and property acquired by a spouse after a decree of legal separation, the court shall consider those contributions of the other spouse to the marriage, including:
>
> (a) the nonmonetary contribution of a homemaker;
>
> (b) the extent to which such contributions have facilitated the maintenance of this property[.]

¶18    We have previously interpreted the above provision to mean that if the nonacquiring spouse contributed to the property's preservation or appreciation, then the nonacquiring spouse is entitled to an equitable share of the appreciated or preserved value which is attributable to his or her efforts.  *Rolf*, ¶ 46, see also *In re Marriage of Steinbeisser*, 2002 MT 309, ¶ 47, 313 Mont. 74, ¶ 47, 60 P.3d 441, ¶ 47.  However, we have also held that in the event that gifted or preacquired assets have not appreciated during a marriage, their value

6

at the dissolution of the marriage cannot be considered a contribution from the marital effort. *Rolf*, ¶ 47.

¶19    In this case, Donald acquired the Elk Meadows property in 1990.  At the time Donald acquired the property, it had an approximate value of $125,000, but because of the mortgage that was in place, it had no net value.  Donald and Sharon moved onto the property in 1990 and married on November 29, 1996.  The Elk Meadows property was then reappraised in 1997 at an approximate value of $324,000.  Accordingly, we conclude that sufficient evidence existed to demonstrate that the Elk Meadows property appreciated in value during both Donald and Sharon's premarital cohabitation as well as their marriage.  Therefore, pursuant to § 40-4-202, MCA (1997), Sharon is entitled to receive an equitable share of the property's appreciated value, attributable to her efforts.

¶20    A district court is vested with broad discretion to distribute the marital estate in a manner which is equitable to each party according to the circumstances of the case.  *In re Marriage of Smith* (1995), 270 Mont. 263, 267, 891 P.2d 522, 525.  Here, the Elk Meadows property had no net value prior to Donald's premarital cohabitation with Sharon, as at the time Donald acquired the property it had an approximate value of $125,000 and a mortgage of approximately $140,000.  As such, the property's increase in net value occurred as a result of improvements that Donald and Sharon made during their premarital cohabitation and marriage.  It is undisputed that a large portion of this increase in value was directly attributable to Sharon's efforts.  Accordingly, the District Court determined that Sharon's equitable share of the Elk Meadows property was one-half of the net proceeds from the sale

7

of that property. We find no abuse of discretion in this award. The District Court's division of the Elk Meadows property is affirmed.

## ISSUE 2

¶21 **Did the District Court abuse its discretion when it ordered Donald to pay Sharon's moving expenses?**

¶22 The District Court issued its original findings of fact and conclusions of law regarding the distribution of the marital estate on May 22, 2001. Donald subsequently filed a motion requesting that the District Court amend portions of its findings of fact and conclusions of law. Donald's motion stated, in pertinent part:

> In its Decree, the Court makes no determination as to who has the right to continue to live in the [Elk Meadows] home pending its sale, who has the right to choose the Realtor, who has to pay the expenses of maintaining the home pending its sale including the taxes and mortgage and who has the responsibility of continuing maintenance and to what extent. The Court is asked to resolve this matter by making further findings as to those matters. Don requests that he be given the exclusive use of the home, that he pay the mortgage and taxes and that the same be repaid to him upon sale of the home, before the monies are split equally between the parties.

¶23 The District Court responded by granting in part, and denying in part, Donald's motion to amend. The District Court then issued amended findings of fact and conclusions of law, which included the following conclusion of law:

> Pending the sale of the Elk Meadows property, the original and second mortgages shall be paid by Don as reasonable rent for the property. Concurrent with the responsibility of paying the mortgages pending the sale of the real property, Don shall also have the right to occupy the Elk Meadows property. Concurrent with the rights and responsibilities noted above, Don shall also be required to pay Sharon $1500.00 in moving expenses. Sharon shall have thirty (30) days from the date of this order in which to find other appropriate living arrangements and move out of the Elk Meadows property.

¶24 Donald maintains that the District Court abused its discretion when it ordered him to pay Sharon's moving expenses. However, Donald testified at trial that he would be willing to pay a reasonable amount of money to assist Sharon in moving out of the Elk Meadows property. Therefore, the District Court had a logical reason for ordering Donald to pay Sharon's moving expenses once it granted his request for exclusive use of the Elk Meadows property. As we noted above, a district court is vested with broad discretion to distribute the marital estate in a manner which is equitable to each party according to the circumstances of the case. *Smith*, 270 Mont. at 267, 891 P.2d at 525. We will not reverse a district court's distribution of property absent an abuse of discretion. *In re Marriage of Engen*, 1998 MT 153, ¶ 26, 289 Mont. 299, ¶ 26, 961 P.2d 738, ¶ 26. Donald has not demonstrated that such an abuse of discretion occurred in this case. Accordingly, the District Court's award of moving expenses is affirmed.

¶25 As a final matter, we note that Donald's opening brief asserted three additional claims regarding the District Court proceedings in this case. However, Donald failed to bolster these claims with any supporting authority. Donald devoted approximately fifteen pages to his factual arguments on these issues in his opening brief, but failed to cite any authority applicable to his claims. Rule 23(a)(4), M.R.App.P., requires that an appellant provide an argument that contains "the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and pages of the record relied on." This Court has repeatedly held that "we will not consider unsupported issues or

arguments." *In re Custody of Krause*, 2001 MT 37, ¶ 32, 304 Mont. 202, ¶ 32, 19 P.3d 811, ¶ 32. Moreover, it is "not this Court's obligation to locate authorities or formulate arguments for a party in support of positions taken on appeal." *In re B. P.*, 2001 MT 219, ¶ 41, 306 Mont. 430, ¶ 41, 35 P.3d 291, ¶ 41. As such, we decline to address the three additional issues presented by Donald in his opening brief.

¶26    For the foregoing reasons, the judgment of the District Court is affirmed.


/S/ PATRICIA COTTER


We Concur:


/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE