FILED

10/10/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0596

DA 22-0596

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 190N

IN RE THE MARRIAGE OF:

PHILIP HAROLD BULLARD,

Petitioner and Appellant,

and

WINDY LYNN BIRKELAND,

Respondent and Appellee.

APPEAL FROM: District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DR-2020-2
Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Karl Knuchel, Webster M. Crist, Karl Knuchel, P.C., Livingston,
Montana

For Appellee:

Jami L. Rebsom, Jami Rebsom Law Firm P.L.L.C., Livingston,
Montana

Submitted on Briefs: August 23, 2023
Decided: October 10, 2023

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Philip Harold Bullard ("Philip") appeals the Findings of Fact, Conclusions of Law and Final Decree entered September 14, 2022, in the Sixth Judicial District Court, Park County. Phillip argues the District Court erred in awarding Windy Birkeland ("Windy") a 55% share in the marital home and using the marital home's present value rather than its value in May 2018 when the couple separated. Windy argues the District Court did not abuse its discretion or commit clear error and divided the marital home equitably in consideration of all the required statutory factors. Additionally, Windy contends the District Court did not err in its valuation of the marital state at the time of dissolution rather than the time of separation. We affirm.

¶3 Philip and Windy became common law married in 1997. They separated in May of 2018, and Philip stayed in the marital home. The parties have one adult child and one minor child, B.B.

¶4 The parties own real property at 90 Shields River Road East, Livingston, Montana. The 4.25 acres was originally unimproved land, and the parties purchased a house in 2005 and moved it onto the property. The house needed considerable work and Philip testified

2

he undertook substantial renovation work to make the home livable. Windy also contributed to making the house habitable, though Philip did the "lion's share" of the physical labor. Windy contributed $25,000 as a down payment for the house from her workers' compensation settlement. Philip testified he has put in additions to the property since the 2018 separation that he estimated were worth around $20,000.

¶5 Philip is employed by Warm Stone, a local company that installs high-end fireplaces. Phillip testified his income from Warm Stone is about $75,000 annually. He sometimes receives bonuses, so his income for 2021 was $83,000. Philip also receives benefits from employment such as health care, a vehicle, and a cell phone. Philip also owns a 10% share of Warm Stone, and he testified that Warm Stone made approximately $1.2 million dollars in gross income in 2020 and 2021. Both Philip and Windy have high school educations.

¶6 For the duration of their marriage, Windy was primarily a homemaker and caretaker for the children while working part-time as she was able. Windy contracted Hepatitis C from a work-related incident in 2005. She received a $132,000 workers' compensation settlement. Windy contributed all her funds from the settlement to the property and other joint expenses during the marriage and has no remaining funds from it. Windy testified her Hepatitis C condition has affected her ability to work full-time. Her latest employment was performing home health care tasks for an elderly lady in 2021, but the work became more than she could physically handle. She testified she believes she is capable of part-time employment but was not working at the time of the case. Philip has been paying

Windy maintenance of $850 a month since August 2021 after being instructed to do so by the District Court in a temporary order.

¶7 The District Court found the value of the marital home to be $800,000 at the time of the final hearing. After their separation, Philip remained in the marital home and paid taxes, the mortgage, and other costs associated with general upkeep. The District Court found the dramatic increase in property value during the separation was due to market forces and not the efforts of either party. The District Court also recognized Philip had been paying for the mortgage, taxes, and maintenance costs since the separation, but Philip also received the benefit of staying in the marital home. There is a remaining mortgage balance of $45,000. The District Court determined that Windy is entitled to 55% equity in the home after deducting the mortgage balance and a $20,000 credit for the improvements Philip made. Windy's share totals $404,250. The District Court found Philip may buy Windy's interest in the house or sell the house and have net proceeds distributed according to their shares.

¶8 We review a district court's findings of fact in a dissolution proceeding to see if they are clearly erroneous. *In re Marriage of Tummarello*, 2012 MT 18, ¶ 21, 363 Mont. 387, 270 P.3d 28. "A finding is clearly erroneous if it is not supported by substantial evidence, the district court misapprehended the effect of the evidence or our review of the evidence convinces us that the district court made a mistake." *In re Marriage of Crilly*, 2005 MT 311, ¶ 10, 329 Mont. 479, 124 P.3d 1151. If the factual findings are not clearly erroneous, we will reverse only if there has been an abuse of discretion. *Crilly*, ¶ 10. A district court

4

abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason resulting in substantial injustice. *Tummarello*, ¶ 21.

¶9     A district court has broad discretion in dividing the marital home equitably considering the circumstances of the parties. *Tummarello*, ¶ 23. The district court is to "equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both." Section 40-4-202(1), MCA. When dividing marital property, the factors the trial court must consider are:

> the duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount and sources of income, vocational skills, employability, home, liabilities, and needs of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution or dissipation of value of the respective homes and the contribution of a spouse as a homemaker or to the family unit. In dividing property acquired prior to the marriage; property acquired by gift, bequest, devise, or descent; property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent; the increased value of property acquired prior to marriage; and property acquired by a spouse after a decree of legal separation, the court shall consider those contributions of the other spouse to the marriage, including:

> (a) the nonmonetary contribution of a homemaker;

> (b) the extent to which such contributions have facilitated the maintenance of this property; and

> (c) whether or not the property division serves as an alternative to maintenance arrangements.

Section 40-4-202(1), MCA.

¶10 The District Court did not abuse its discretion in awarding Windy a 55% share of the marital home since it fully considered all the required statutory factors and its reasoning was supported by the evidence. The District Court made findings considering the health, education, and economic positions and contributions to the marriage of each of the parties. The District Court noted the marriage lasted over twenty years and Windy made significant contributions as a homemaker and spent much of her worker's compensation settlement on the home and household expenses. The District Court further found Windy's health was poor and prevented full-time work. Additionally, the District Court reasoned Windy's career prospects were sparse considering her lack of work history and health issues while Philip has a stable career with a comfortable income. Philip also benefits from a 10% interest in Warm Stone, which the District Court awarded him in full. The District Court acknowledged Philip performed significant renovations and maintenance on the house, but it also noted Windy contributed some physical labor and a significant amount of her worker's compensation settlement towards the house. The District Court arrived at the conclusion of awarding Windy a 55% share in the house due to the disparity in income potential and health, both of their contributions to the house, and Philip's additional assets in Warm Stone. Additionally, the District Court found Windy needed maintenance, but maintenance was to terminate upon Windy being paid her share of the home as an alternative to long-term maintenance. A district court may distribute property in lieu of maintenance if it makes its intention to do so clear. *Tummarello*, ¶ 28 (citing *In re Funk*, 2012 MT 14, ¶¶ 19, 24, 363 Mont. 352, 270 P.3d 39).

6

¶11    Philip argues the District Court erred by awarding Windy a larger share of the home when he has been paying the mortgage, taxes and upkeep since 2018 while Windy has not contributed financially to the home since 2018. The fact that Windy has not monetarily contributed to the marital home since 2018 is only one factor to be considered in dividing the home, not a determinative factor. See *In re Marriage of Davis*, 1999 MT 218, ¶ 26, 295 Mont. 546, 986 P.2d 408. As a marital asset, the house must be considered along with all the other property, assets, earning capacity of the parties, and each party's contribution to the marriage. See *Tummarello*, ¶¶ 26-28. The District Court did not exceed the bounds of reason when it considered Philip's sole monetary contributions since 2018 but also considered that Philip received the benefit of staying in the marital home while Windy had to live elsewhere. The District Court considered all the relevant factors listed in § 40-4-202(1), MCA, and its reasoning was supported by substantial evidence, thus we find there was no abuse of discretion.

¶12    Next, the District Court did not abuse its discretion when it chose to value the home at the time of the final hearing rather than the time of separation. The district court has broad discretion in utilizing any reasonable valuation of property supported by the record. *In re the Marriage of Swanson*, 2004 MT 124, ¶ 15, 321 Mont. 250, 90 P.3d 418. For property valuation, we look for whether "the district court had adequate evidence to support its conclusions." *Collins v. Collins*, 2004 MT 365, ¶ 26, 324 Mont. 500, 104 P.3d 1059. While Philip has maintained the house since 2018, he has also had the exclusive benefit of residing in the house. The District Court reasoned much of the increased value of the

7

property since 2018 was due to market forces and neither party should benefit from the increased value not attributable to their efforts. If the District Court had awarded Windy equity based on that 2018 value of between $525,000 and $549,000, Philip would only have to pay slightly more than a third of what the property is currently worth. The District Court did subtract the remaining mortgage and credit Philip $20,000 for the improvements he has made since the separation before subjecting the rest to the division. The District Court arrived at the value of $800,000 after hearing from both parties' real home experts and determining Ms. Swanson's valuation was more accurate considering her evaluation used comparable sales geographically closer to the house than Philip's expert, Ms. Nolan. The District Court's decision to utilize the market value at the time of dissolution is reasonable and supported by the record.

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶14 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ BETH BAKER
/S/ JIM RICE