No. 02-463

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 63

In Re the Marriage of:

HAROLD M. SMITH,

Petitioner and Respondent,

and

SUSAN A. SMITH,

Respondent and Appellant.

APPEAL FROM:     District Court of the First Judicial District,
In and for the County of Lewis and Clark, Cause No. CDR-2001-96,
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

David N. Hull, Attorney at Law, Helena, Montana

For Respondent:

Robert M. Cummins, Attorney at Law, Helena, Montana

Submitted on Briefs:  December 5, 2002

Decided:  March 31, 2003

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1     Harold Smith, the Petitioner, filed a petition for dissolution of his marriage to Susan Smith in the District Court for the First Judicial District in Lewis and Clark County.  The District Court entered its Findings of Fact, Conclusions of Law and Decree of Dissolution which dissolved the marriage and distributed the marital estate.  The Respondent, Susan Smith, appeals the District Court's distribution of the marital estate and denial of her claim for maintenance.  We affirm the judgment of the District Court.

¶2     The issue on appeal is whether the District Court abused its discretion when it distributed the marital estate and denied Susan's claim for maintenance.

FACTUAL AND PROCEDURAL BACKGROUND

¶3     Harold and Susan Smith married on September 9, 1966, in Yellowstone County, Montana.  Harold, who was born on April 1, 1948, is currently an aviator with the rank of Chief Warrant Officer 4 in the Montana Army National Guard.  Susan, who was born on October 25, 1946, is currently a Purchasing Supervisor for the State of Montana Department of Environmental Quality, and has worked for the State of Montana for approximately 24 years.  Harold and Susan have lived separately since June 2, 2000.  On March 22, 2001, Harold petitioned for dissolution of their marriage.

¶4     At trial, Harold testified that after 20 years of active service for the National Guard, he is required by law to retire as a pilot effective April 1, 2003, and that he has several medical conditions which make a future career in aviation unlikely.  These

2

conditions include high blood pressure, high cholesterol, high blood sugar, and Type II Diabetes.

¶5 Susan testified that she had worked for the State of Montana for 24 years and that she anticipates that she will remain at her position for an additional five to seven years.

¶6 Harold's annual salary at the time of trial was $76,944, but was to be reduced to $75,288 subsequent to the final divorce decree, and to $27,545 following his retirement on April 1, 2003. Evidence at trial established that Susan's annual salary was $30,629.

¶7 In its Findings of Fact and Conclusions of Law, the District Court adopted Susan's suggested distribution of the personal and real property, other than retirement income, and distributed it as follows:

| | Harold | Susan |
|---|---|---|
| Checking Account-CU | $ 1,200 | $ 250 |
| Checking Account-H&S Ent. | $ 318 | |
| Checking Account-AFSB | $ 399 | |
| Checking Account-NWA | | |

3

$

8
8
1

| | | |
|---|---|---|
| Savings Account | $ 13,677 | $ 675 |
| Deferred Compensation–Harold | $ 5,051 | |
| Deferred Compensation–Susan | | $ 41,416 |
| Insurance Fund-Cash Value | | $ 5,207 |
| 2000 Tax Return | | $ 6,200 |
| Real Property-5.0 acres | | $ 35,000 |
| Oppenheimer Fund | | $ 1,029 |
| House Sale Proceeds | $ 79,000 | $ 79,000 |
| Franklin Fund - Utility | | $ 6,749 |
| Franklin Fund - Government | | $ 12,390 |
| D.A. Davidson Money Market | | $ 5,074 |
| D.A. Davidson Securities | | $ 3,517 |
| Trailer home | $ 1,750 | $ 1,750 |
| Other Personal Property | $ 34,987 | $ 34,987 |
| Total | $ 137,263 | $ 233,244 |

Accordingly, not counting retirement income, Harold received 37% of the marital property and Susan received 63% of the marital property. The District Court's distribution of the above property

4

is not challenged; however, Susan does dispute the District Court's final distribution of the parties' retirement plans.

¶8   The District Court concluded that Harold was entitled to the entire amount of his military retirement, which will pay him $2,295.45 per month ($27,545 annually) beginning April 1, 2003, until his death.  In its findings, the District Court noted that the only valuation expert at the trial, Philip Bird, calculated the present value of Harold's retirement to be $315,173 as of August 2, 2001.  The District Court also distributed to Harold his pension plan with Northwest Airlines which would, according to Bird, pay $118.89 per month for life at age 65.  Bird calculated the present value of this pension plan to be $6,791.  Finally, the District Court distributed to Susan her entire retirement plan from the Montana Public Employee Retirement System.  The evidence was that if Susan retired at age 55, she would receive monthly payments of $747 per month, while if she retired at age 60, she would receive $1,543 per month.  According to Bird, using the $747 per month payment for calculation of her retirement plan's present value, the present value of her retirement account was $126,686 as of October 18, 2001.  The District Court acknowledged all of Bird's valuations with respect to the retirement accounts in its Findings of Fact.

¶9   The District Court's final distribution of the marital estate, including retirement income, based on present value, is set forth below:

|                                | Harold      | Susan       |
|--------------------------------|-------------|-------------|
| Military Retirement            | $ 315,173   |             |
| Northwest Airlines Retirement  | $   6,791   |             |
| State of Montana Retirement    |             | $  126,686  |

5

| | | |
|---|---|---|
| All other assets | $ 137,263 | $ 233,244 |
| Total Marital Assets | $ 459,227 | $ 359,930 |
| % Share of Present Value of the Marital Estate | 56.06% | 43.94% |

## STANDARD OF REVIEW

¶10 We review a district court's division of marital assets to first determine whether the district court's findings are clearly erroneous. *In re Marriage of Stufft* (1996), 276 Mont. 454, 459, 916 P.2d 767, 770. If the district court's findings of fact are not clearly erroneous, we will not disturb the district court's distribution of marital property unless the district court abused its discretion. *In re Marriage of Smith* (1995), 270 Mont. 263, 267-68, 891 P.2d 522, 525. The standard for determining whether a district court abused its discretion is "whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *In re Marriage of Rolfe* (1985), 216 Mont. 39, 45, 699 P.2d 79, 83 (citation omitted).

## DISCUSSION

¶11 Did the District Court abuse its discretion when it distributed the marital estate and denied Susan's claim for maintenance?

¶12 There is no contention by either party that the District Court's Findings of Fact were clearly erroneous. Susan contends that the District Court abused its discretion when it distributed the marital estate because the District Court distributed 56% of the marital estate to Harold, despite the length of their marriage and the fact that Harold earned substantially more income as a

6

pilot and would earn more in retirement. She further contends that the District Court abused its discretion by trying to forecast the parties' future employment and financial situations, and that the Court should have instead split the marital estate according to its present value. Lastly, Susan contends that in light of the District Court's distribution of the marital estate, the District Court abused its discretion by denying her claim for maintenance.

¶13 Section 40-4-202, MCA, vests the District Court with "broad discretion to distribute the marital estate in a manner which is equitable to each party according to the circumstances of the case." *Smith*, 270 Mont. at 268, 891 P.2d at 525. It does not require that the distribution be equal. *In re Marriage of Walls* (1996), 278 Mont. 413, 416, 925 P.2d 483, 485. Section 40-4-202(1), MCA, further provides:

> In making apportionment, the court shall consider the duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income . . . .

¶14 The District Court recognized that Harold faced mandatory retirement by April 1, 2003. In addition, Harold had several health problems, some of which could preclude any future career as a pilot. Little testimony or evidence was provided regarding his

7

future employability other than his testimony that he would likely seek future employment outside the field of aviation. On the other hand, the District Court found that Susan could continue her employment with the State of Montana at $30,629 per year for approximately 5 to 7 years, and that through continued employment she could receive $1,543 per month at the age of 60 (October 25, 2006). Susan testified that she did intend to remain employed for 5 to 7 years and that she had no current health problems. Therefore, Susan's income in the immediate future will, in all likelihood, exceed Harold's income. While Harold will be required effective April 1, 2003, to draw upon his portion of the marital estate as his primary income source, Susan will continue to have income from her salary with the State of Montana, continue to contribute to her deferred compensation plan and add to the value of her retirement plan. Furthermore, the District Court distributed a substantial majority of the remaining investment accounts and real property to Susan. Based on these facts, we conclude that the District Court did not abuse its discretion when it distributed the marital estate pursuant to § 40-4-202(1), MCA.

¶15 We reach a similar conclusion with respect to the District Court's refusal to award maintenance to Susan. Section 40-4-203(1), MCA, provides:

> In a proceeding for dissolution of marriage . . . the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:
> (a) lacks sufficient property to provide for his reasonable needs; and
> (b) is unable to support himself through appropriate employment . . . .

The record reflects Susan had sufficient property to provide for her reasonable needs and was able to support herself through

8

employment with the State of Montana. While Harold, when employed by the National Guard, earned more income than Susan, that fact alone does not require a maintenance award. Therefore, we conclude the District Court did not abuse its discretion when it denied maintenance payments pursuant to § 40-4-203(1), MCA.

¶16 For the foregoing reasons, we affirm the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JIM REGNIER
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ JIM RICE