No. 03-200

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 292

IN RE THE MARRIAGE OF

KIMBERLY K. GERHART,

Petitioner and Appellant,

and

KEVIN GERHART,

Respondent and Respondent.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and for the County of Gallatin, Cause NO. DR-00-296
                The Honorable Mike Salvagni, Judge presiding.

COUNSEL OF RECORD:

            For Appellant:

            James D. McKenna; Walsh & McKenna, Bozeman, Montana

            For Respondent:

            Magdalena C. Bowen; Bowen & Parker, Bozeman, Montana

                                Submitted on Briefs:  July 31, 2003

                                    Decided:  October 23, 2003

Filed:

        _____
                        Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Kimberly K. Gerhart appeals from the Findings of Fact, Conclusions of Law and Decree of Dissolution entered by the Eighteenth Judicial District Court, Gallatin County. We affirm.

¶2 Kimberly raises the following issues on appeal:

¶3 1. Did the District Court abuse its discretion in failing to award her spouse's bonus and profit-sharing award to Kimberly when he disclosed them only two business days before trial?

¶4 2. Did the District Court abuse its discretion in failing to award her spouse's interest in an Employee Stock Ownership Plan (ESOP) to Kimberly?

¶5 3. Did the District Court improperly determine the amount and distribution of Kimberly's pretrial expenditures of home sale proceeds?

¶6 4. Is the District Court's distribution of the marital estate inequitable?

## BACKGROUND

¶7 Kimberly and Kevin Gerhart married in 1981. Kimberly worked as a retail employee and a bank teller until the parties decided to have a family. Subsequently, she worked primarily as a homemaker. The couple had two children, born in 1994 and 1996. Kevin worked in the dairy industry throughout the marriage.

¶8 The parties separated in April of 1999, and Kimberly petitioned for dissolution in August of 2000. After the separation, Kevin voluntarily paid Kimberly's living expenses and child support until the couple sold the marital home in October of 2000. As agreed by

the parties, the net proceeds of $118,958.73 were placed into a money market account in Kimberly's name. At that time, Kevin stopped paying for Kimberly's personal living expenses, but he continued to make monthly child support payments of $1,500. Kimberly spent some of the sale proceeds in the ensuing months. In September of 2001, when the account balance had fallen to approximately $83,000, the District Court issued its Findings of Fact, Conclusions of Law and Temporary Order, which it amended in October of 2001. In the Temporary Order, the District Court prohibited further withdrawals from the home sale proceeds account absent a court order. In addition, the District Court ordered Kevin to pay $1,326 in child support and $1,675 in temporary maintenance each month.

¶9 During the interim, Kevin had begun working for a new employer in a management position in December of 1999. Shortly thereafter, Kevin's employer instituted an ESOP program, in which Kevin could participate after completing one year of employment. Under the ESOP's vesting schedule, Kevin had no vested interest in the ESOP at the time of trial on Kimberly's dissolution proceeding. Kevin testified at trial that he had no vested interest in the ESOP shares, and Kimberly could have the asset "if it has no value."

¶10 In 2001, Kevin received a bonus and profit-sharing award totaling $45,532.70. He deposited the checks into an investment bank account which, at the time of trial in March of 2002, had declined in value to $28,798.23. Kevin testified that he planned to use the funds to pay increased taxes resulting from the bonus and award moving him into a higher tax bracket.

3

¶11 Kevin failed to disclose the account in his Final Declaration of Disclosure. After Kimberly's counsel requested Kevin's W-2 forms for the year 2001, Kevin amended his disclosure to include the account, and the amended disclosure was received two days before trial. Kevin testified he had inadvertently omitted the bonus and profit-sharing award, having placed his W-2 tax form in an envelope marked for his 2001 taxes without looking at it and simply forgetting about the account.

¶12 After trial, the District Court entered its Findings of Fact, Conclusions of Law and Decree of Dissolution. It valued the marital estate at $444,637, and apportioned $218,694 to Kimberly and $225,943 to Kevin. The court also ordered Kevin to pay child support of $1,736, as well as $2,000 in maintenance, per month. The trial court observed that Kevin had "no vested interested [sic] in the ESOP plan" and acknowledged the account containing the bonus and profit-sharing award, but included neither as a marital asset to be divided.

¶13 The trial court found that Kimberly had spent $43,958 of the marital home proceeds before Kevin stopped paying her living expenses. It divided the $83,635 home proceeds account balance equally between the parties, and added the $43,958 Kimberly previously had spent to her distribution, resulting in a $127,593 valuation of the account.

¶14 Both parties timely filed motions for amendment and/or clarification of the District Court's findings, conclusions, and decree. In its Order RE: Motions to Amend Findings of Fact, Conclusions of Law and Decree of Dissolution and Motion for Clarification of Court

4

Orders, the court denied Kimberly's motion for amendment of the property distribution. Kimberly appeals.

## STANDARD OF REVIEW

¶15 We initially review a district court's division of marital property to determine whether the findings of fact upon which the division is based are clearly erroneous. *In re Marriage of Pospisil*, 2000 MT 132, ¶ 19, 299 Mont. 527, ¶ 19, 1 P.3d 364, ¶ 19 (citation omitted). "A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake." *In re Marriage of Steinbeisser*, 2002 MT 309, ¶ 17, 313 Mont. 74, ¶ 17, 60 P.3d 441, ¶ 17 (citation omitted).

¶16 Pursuant to § 40-4-202, MCA, a district court has broad discretion to distribute a marital estate equitably according to the circumstances of the case. *In re Marriage of Bee*, 2002 MT 49, ¶ 34, 309 Mont. 34, ¶ 34, 43 P.3d 903, ¶ 34 (citation omitted). Absent clearly erroneous findings, we will affirm a trial court's property distribution unless the court abused its discretion. *Marriage of Pospisil*, ¶ 19 (citation omitted).

## DISCUSSION

¶17 1. Did the District Court abuse its discretion in failing to award Kevin's bonus and profit-sharing award to Kimberly when he disclosed them only two business days before trial?

¶18 Kimberly argues that the presumption contained in § 40-4-253(4), MCA, required the District Court to penalize Kevin by awarding his late-disclosed assets to her. Her argument is without merit.

5

¶19 Section 40-4-253(4), MCA, provides, in pertinent part, that a party's failure to disclose an asset on his or her final disclosure declaration is presumed to be grounds for the court to award the undisclosed asset to the other party separate from the equitable division of the marital estate. Thus, it is undisputed that the statute clearly authorizes a court to award undisclosed assets to the opposing party.

¶20 The statute only creates a presumption, however. Section 26-1-601, MCA, sets forth a list of conclusive presumptions, including "any other presumption, which, by statute, is expressly made conclusive," while § 26-1-602, MCA, provides that all other presumptions are disputable and may be controverted by other evidence. Section 40-4-253(4), MCA, on which Kimberly relies, does not state that the presumption therein is conclusive. Consequently, the presumption at issue is disputable.

¶21 Kevin testified about why he was late in disclosing the account. Kimberly argues that Kevin's explanation of the late disclosure is insufficient to overcome the presumption in § 40-4-253(4), MCA. As the finder of fact, however, it was within the District Court's province to determine Kevin's credibility. *In re Marriage of Nies & Cooper*, 2003 MT 100, ¶ 18, 315 Mont. 260, ¶ 18, 68 P.3d 697, ¶ 18 (citation omitted); *Albrecht v. Albrecht*, 2002 MT 227, ¶ 47, 311 Mont. 412, ¶ 47, 56 P.3d 339, ¶ 47 (citations omitted). The trial court apparently accepted Kevin's explanation.

¶22 We conclude the District Court did not abuse its discretion by failing to award the profit-sharing and bonus account to Kimberly.

¶23 2. Did the District Court abuse its discretion in failing to award Kevin's interest in the ESOP to Kimberly?

¶24 Kimberly asserts that the District Court abused its discretion by failing to award Kevin's interest in the ESOP to her because Kevin agreed to allow her to have it. Even assuming *arguendo* that Kimberly properly characterizes Kevin's testimony, Kimberly has failed to cite any authority to support her position. Rule 23(a)(4), M.R.App.P., requires an appellant to cite to authorities in support of the arguments raised. Moreover, we have repeatedly held that absent such authorities, we will not consider the issue. *See, e.g.*, *In re Marriage of Clark*, 2003 MT 168, ¶ 25, 316 Mont. 327, ¶ 25, 71 P.3d 1228, ¶ 25 (citation omitted). Consequently, we decline to address this argument.

¶25 3. Did the District Court improperly determine the amount and distribution of Kimberly's pretrial expenditures of home sale proceeds?

¶26 Kimberly sets forth two arguments regarding the trial court's determinations relating to the home sale proceeds she spent before the court awarded her temporary maintenance in September of 2001. First, Kimberly argues that the trial court abused its discretion when it awarded her "funds that did not exist" because she had spent them on reasonable living expenses. Second, Kimberly contends that the trial court erred in determining the pretrial expenditures were $43,958. We address her arguments in reverse order.

¶27 Kimberly claims the trial court erred in its calculation of the amount of home sale proceeds she spent. She states she spent $35,325.

¶28 At trial, Kevin testified that Kimberly had spent $34,958. Kimberly testified she had spent approximately $35,000. No other evidence was presented. The trial court found

7

Kimberly had spent $43,958, which we observe is the same as Kevin's figure except that the first two digits are inverted.

¶29    The first prong of our standard of review of a trial court's finding is whether it is clearly supported by substantial evidence. *See Marriage of Steinbeisser*, ¶ 17. Nothing in the record supports a finding that Kimberly spent $43,958 of the home sale proceeds. Consequently, the finding is clearly erroneous.

¶30    Kevin asserts, however, that Kimberly did not raise this matter in the District Court. Therefore, according to Kevin, it is not properly before us. He relies on *Siefke v. Siefke*, 2000 MT 281, 302 Mont. 167, 13 P.3d 937.

¶31    This Court generally will not address an issue raised for the first time on appeal because "[a] district court cannot be placed in error for something which it never had the opportunity to decide." *Siefke*, ¶ 25. The procedural facts in *Siefke* render it otherwise readily distinguishable from the present case, however. There, the wife failed to object during a hearing to the husband's evidence regarding the calculation of his child support, and the trial court made clear that it intended to consider the evidence presented. On appeal, the wife attempted to challenge the evidence and its sufficiency. *Siefke*, ¶ 24. We refused to consider the issue raised for the first time on appeal. *Siefke*, ¶ 25.

¶32    Here, the miscalculation Kimberly raises could not have been objected to in the District Court because both she and Kevin presented evidence that her expenditures were around $35,000. Kimberly simply could not have known that the court would miscalculate or misstate the amount.

¶33 Kimberly also argues that the District Court should not have included any pretrial expenditures as part of her share of the marital estate because she used the home sale proceeds for her reasonable living expenses. She cites to no authority for this argument, however. As stated above, Rule 23(a)(4), M.R.App.P., requires an appellant to cite to authorities in support of the arguments raised, and we will not consider an issue briefed without such citations. *See Marriage of Clark*, ¶ 25. Consequently, we decline to address this argument.

¶34 We conclude the District Court clearly erred when it found that Kimberly's pretrial expenditures of the home sale proceeds were $43,958. For the reasons discussed below, however, we hold this does not constitute reversible error.

¶35 4. Is the District Court's distribution of the marital estate inequitable?

¶36 Kimberly next argues that if this Court decides the previous issue in her favor, her percentage of the marital estate will be reduced. Therefore, she contends she is entitled to reconsideration of the overall division of property. We disagree.

¶37 As discussed above, the District Court erroneously overstated Kimberly's pretrial expenditures as $43,958. That error also affected the District Court's valuation of the home sale account and, ultimately, Kimberly's share of the marital assets.

¶38 As valued and distributed by the District Court, Kimberly received 49.185% of the total marital estate and Kevin received 50.815%. Had the District Court attributed $34,958 in pretrial expenditures to Kimberly and made a corresponding reduction in the value of the

home sale account and the marital estate, Kimberly would have received $209,694, or 48.135% of the marital estate, a decrease of 1.050%.

¶39 Section 40-4-202 requires the district court to make an equitable distribution, but it does not necessarily require equal distribution. *In re Marriage of Smith*, 2003 MT 63, ¶ 13, 314 Mont. 421, ¶ 13, 67 P.3d 199, ¶ 13 (citations omitted). We recently held that a 1/6 of 1% shortage to one party was insufficient to result in a conclusion that the property distribution was "unequal," even in light of the parties' agreement to an "equal distribution." *In re Marriage of Hochhalter*, 2001 MT 268, ¶¶ 37-38, 307 Mont. 261, ¶¶ 37-38, 37 P.3d 665, ¶¶ 37-38.

¶40 In the present case, and notwithstanding the court's erroneous finding, we must conclude that the property distribution remains, in the District Court's words, "fair and equitable." From the latter phraseology, it is clear that the District Court intended an equitable–not necessarily equal–distribution. The court's intent is even more clear, however, regarding distribution of the home sale proceeds account. The District Court stated in that regard that "the balance of funds from the proceeds of the sale of the home will be equally divided between the parties." The court accomplished this equal division of the balance by awarding $41,817 to Kimberly and $41,818 to Kevin. The District Court then stated that "[t]he monies that were paid to Kimberly from those proceeds [that is, her expenditures] are included in the distribution to her." Thus, whether Kimberly's expenditures were $34,958 or $43,958, the court intended to increase the value of the account–and the marital assets–in that amount and distribute it to Kimberly as part of her fair and equitable allocation.

10

¶41    On this record, we hold that the property distribution is equitable.

¶42    Affirmed.


                                                /S/ KARLA M. GRAY

We concur:


/S/ JIM REGNIER
/S/ JOHN WARNER
/S/ PATRICIA COTTER

Justice Jim Rice dissenting.

¶43    I dissent from the Court's resolution of Issues 3 and 4.

¶44    The Court declines to address the merits of Kimberly's contention that the District Court erred by including her pretrial expenditures from home sale proceeds within her share of the marital estate on the ground that she "cites to no authority for this argument." ¶ 33. However, specific authority is not necessarily existent for every issue which may arise during the course of a district court's distribution of marital property, which the law requires to be equitable. Here, Kimberly argues that the District Court abused its discretion in making the property distribution and cites *Marriage of Steinbeisser*, 2002 MT 309, 313 Mont. 74, 60 P.3d 441, in support of her argument. I conclude therefrom that Kimberly has offered sufficient authority and would reach the merits of the issue. Further, I conclude that the District Court indeed abused its discretion.

¶45    Following their separation, Kevin paid $1,500 per month for Kimberly's living expenses until sale of the parties' home in October 2000, when Kevin stopped paying maintenance and paid only child support (Finding No.18). About a year later, the court, based upon Kevin's annual income of $132,000 and Kimberly's imputed annual income of $10,980, required that Kevin pay temporary maintenance in the amount of $1,675 per month. However, for that intervening year, Kimberly had no choice but to withdraw funds from the sale proceeds to support herself. Further, the District Court, in its final order, noted that its earlier orders had failed "to allow for any daycare expenses for the children" during this time, causing an additional expense to Kimberly of $300 per month (Finding No. 11).

12

¶46 Kevin argues that Kimberly's withdrawals were used for other purposes, citing Kimberly's testimony that "some" of these expenditures were for living expenses. However, Kevin mischaracterizes Kimberly's testimony. In response to a question about distribution of the proceeds, Kimberly testified that she had used "some"–in other words, less than the *total sale proceeds*–for living expenses. She did not testify that she had used only "some" of the *withdrawals* for living expenses. Under additional questioning, this point was clarified:

> [Counsel]: You testified that you used some of those funds for your own living expenses; is that correct?
>
> [Kimberly]: I did.
>
> [Counsel]: Is that how the balance went from [$118,000] to the current balance?
>
> [Kimberly]: Yes.

Thus, the accurate conclusion to be drawn from Kimberly's testimony is that *all* of the withdrawals were for living expenses, including the daycare expenses which the court admittedly failed to consider, during the year that she was not receiving maintenance from Kevin.

¶47 Although the District Court noted that Kimberly made the withdrawals from the account, and then included those withdrawals within her share of the property distribution, it failed to acknowledge that the withdrawals were expended for living expenses necessitated by Kevin's failure to pay maintenance and the court's earlier failure to consider and provide

for the children's daycare expenses (Finding No. 25). This failure was an abuse of discretion.

¶48 This result of this error was to "award" $35,300 to Kimberly which she had previously expended for her and her children's living expenses. This error, combined with the nearly $9,000 error which the Court recognizes in ¶ 34, is equivalent to 10 percent of the total marital estate, a significant impact. Therefore, I would reverse on issues 3 and 4 and remand for reconsideration of the estate distribution after correction of these errors.


/S/ JIM RICE