FILED

03/04/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0278

DA 24-0278

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 45N

IN RE THE MARRIAGE OF:

TASHA STUCK, f/k/a
TASHA SQUILLACIOTTI,

      Petitioner and Appellee,

  and

BRIAN SQUILLACIOTTI,

      Respondent and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                  In and For the County of Lewis and Clark, Cause No. CDR-2023-70
                  Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Brian Squillaciotti, Self-Represented, Helena, Montana

      For Appellee:

            Tasha Stuck, Self-Represented, Helena, Montana

                          Submitted on Briefs:  February 4, 2025

                                 Decided:  March 4, 2025

Filed:

                    _____
                             Clerk

Chief Justice Cory J. Swanson delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Appellant Brian Squillaciotti, representing himself, appeals from the April 23, 2024 order issued by the First Judicial District Court, Lewis and Clark County, that denied his second request to amend the Property Settlement Agreement (PSA) that the District Court incorporated into the dissolution decree. We affirm.

¶3     On February 3, 2023, Tasha Stuck, then known as Tasha Squillaciotti, petitioned for dissolution of the parties' marriage. Stuck and Squillaciotti each represented themselves in the dissolution proceedings.

¶4     On August 4, 2023, Stuck and Squillaciotti filed a joint affidavit requesting dissolution without hearing. On August 11, 2023, they filed a PSA. The PSA provided, in relevant part, that Stuck and Squillaciotti jointly owned a mobile home, located on a rented lot in a trailer park. They had purchased the home for approximately $66,000, and it was encumbered with a remaining loan balance of approximately $6,000. By the time they entered into the PSA, Stuck had moved out of the trailer and Squillaciotti continued to reside there. In the PSA, they agreed Squillaciotti would continue to live in the trailer but, within 90 days of the decree of dissolution, he would obtain a cash-out refinance or

2

assumption of the loan and pay Stuck $30,000 for her equity in the trailer. The PSA further provided that Squillaciotti would be solely responsible for the loan payments until he made the equity payment to Stuck and, if he could not obtain financing within 90 days, he would sell the trailer and split the sale proceeds with Stuck 50-50.

¶5 On August 11, 2023, the District Court entered its Findings of Fact, Conclusions of Law, and Final Decree of Dissolution (Decree). The court found that the PSA terms were not unconscionable as to the distribution of the parties' property, debts, and maintenance, and concluded that the PSA created an equitable distribution of the marital estate. It therefore incorporated the PSA in its ruling. Thus, under the terms of the PSA, Squillaciotti had until November 9, 2023, to pay Stuck $30,000 for her equity in the trailer.

¶6 On August 28, 2023, Squillaciotti filed a motion that was, in substance, a motion to amend the distribution of the marital estate as set forth in the Decree. Relevant to his present appeal, Squillaciotti explained in the motion, in part, that he wanted to renegotiate the terms regarding the trailer. Squillaciotti alleged that he has a learning disability that interfered with his ability to fully comprehend the agreed-upon terms. He admitted that, when he and Stuck negotiated the terms of the PSA, he understood that he was agreeing to either refinance the trailer within 90 days or put it up for sale. However, he alleged he did not understand at the time that he could "get into trouble" if he did not abide by the PSA's terms. Instead, he believed he could disregard the PSA without adverse consequences.

¶7 Squillaciotti advised the court that he wanted to continue living in the trailer and making monthly payments on the current loan until the $6,000 balance was paid in full. After he paid off the loan, he intended to sell the trailer. However, instead of dividing the

3

sale proceeds 50-50, as the parties had agreed, he would instead retain $6,000 for himself and then split the remainder of the proceeds 50-50.

¶8 On October 18, 2023, the District Court held a hearing on Squillaciotti's motion. The hearing proceeded as an Informal Domestic Relations Trial pursuant to MUDCR 17. Both parties were self-represented; a family friend with experience assisting disabled individuals assisted Squillaciotti at the hearing. The court then issued rulings to resolve disagreements and misunderstandings about the PSA on October 23, 2023. Relevant to the trailer, the court amended the property distribution as follows: "[Stuck] agreed that, even though she needs the money for her share of the trailer home, she will give [Squillaciotti] **150 days (rather than 90 days)** to refinance the home. When the home is refinanced, [Stuck] will receive one-half of the amount the trailer appraises for, minus the loan balance as of September 1, 2023." (Emphasis in original.) The Order does not specify whether the 150 days was to run from the date of this Order or from the Decree of Dissolution. The later date gave Squillaciotti until March 21, 2024, to refinance the trailer.

¶9 On March 11, 2024, Squillaciotti filed a "Motion for extension on property distribution of selling mobile home," which asked the court to amend the property distribution a second time. He explained the trailer was on the market, but he was dissatisfied with the offers he had received. He further alleged that his real estate agent had ceased showing the property on March 10, 2024, and he was seeking a new agent.

¶10 Stuck responded in opposition to Squillaciotti's motion for additional time. She alleged Squillaciotti had received several reasonable offers, but he declined all of them. She further alleged that Squillaciotti's real estate agent ceased representing the property

4

because Squillaciotti had refused the purchase offers. She asserted that Squillaciotti was not trying to sell the trailer.

¶11 On April 23, 2024, the District Court issued an order denying Squillaciotti's motion for additional time to sell the trailer. The court's order does not set forth its reasoning. It is a form order upon which the court handwrote, "the extension is DENIED." Squillaciotti then filed this appeal.

¶12 On appeal, Squillaciotti asserts that he ran out of time to sell the trailer and that he does not know why the court denied his second request for more time because the court did not explain its reasoning in the order. Squillaciotti asks this Court to appoint a new District Court judge and provide him more assistance in resolving the dispute with Stuck. Squillaciotti further indicates that he has engaged a new real estate agent but does not intend to proceed with selling the trailer until this appeal is resolved.

¶13 Under § 40-4-202, MCA, a district court has broad discretion to distribute a marital estate equitably according to the circumstances of the case. *In re Marriage of Gerhart*, 2003 MT 292, ¶ 16, 318 Mont. 94, 78 P.3d 1219. We review a district court's distribution of a marital estate for abuse of discretion. The test is whether the court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *In re Marriage of Thorner*, 2008 MT 270, ¶ 21, 345 Mont. 194, 190 P.3d 1063.

¶14 In this case, it would have been preferable if the District Court's April 23, 2024 order had included the court's reasoning. However, the court's reasoning is apparent when this order is viewed in context with the orders preceding it. The court distributed the

marital estate equitably in the Decree, and later found good cause to amend that distribution. When Squillaciotti moved the court to amend the distribution a second time, the court summarily denied that request because the court had previously received information that Squillaciotti was not fulfilling the PSA in good faith, and it determined that the distribution was equitable. Squillaciotti has not convinced us that the District Court abused its discretion in the manner in which it distributed the marital estate and we will not disturb that court's decision.

¶15    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶16    Affirmed.

/S/ CORY J. SWANSON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ KATHERINE M BIDEGARAY
/S/ JIM RICE